UNITED STATES of America

v.

William T. SMITH, Jr., Appellant.

No. 87–5214.

United States Court of Appeals,
Third Circuit.

Argued Nov. 3, 1987.

Decided Feb. 17, 1988.

Rehearing and Rehearing In Bank
Denied March 9, 1988.

John Rogers Carroll (argued), Carroll & Carroll, Philadelphia, Pa., for appellant.

James J. West (argued), U.S. Atty., Harrisburg, Pa., for appellee.

Before SLOVITER and BECKER, Circuit Judges, and COWEN, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This appeal grows out of a bribery conspiracy that, in the words of the district court judge who sat through the many days of trials and hearings, "struck at the very heart of state government." App. at 151. William T. Smith, Jr., a federal prisoner, appeals from an order of the district court denying his motion to reduce his sentence imposed following his conviction for his part in that scheme.

### I.

### *Facts*

As more fully set forth in our earlier opinion affirming Smith's conviction, the charges arose out of a scheme in which Smith, an attorney and the then Republican County Chairman of Dauphin County, and John R. Torquato, the son of a former Democratic County Chairman of Cambria County, agreed to make political contributions to certain Pennsylvania state officials, including the Republican State Chairman, Robert Asher, and the State Treasurer, R. Budd Dwyer, in order to obtain lucrative contracts for CTA, Ltd., a small California company. Smith and Torquato were to be substantially remunerated for their efforts. Indeed, had the scheme succeeded, Smith stood to gain two million dollars. Instead, Smith as well as four other individuals and two corporations were charged in a thirty-nine count indictment on a variety of federal crimes. *See United States v.*

* Hon. Robert E. Cowen, United States District Court for the District of New Jersey, sitting by designation. Since the argument of this appeal, Judge Cowen has become a member of this Court.

*Smith,* 789 F.2d 196 (3d Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986).

Smith and the government engaged in post-indictment negotiations which ended when the government refused to give Smith total immunity from prosecution. Smith's co-conspirator Torquato did reach an agreement with the government whereby, in return for his cooperation, he pled guilty to only one count of the indictment. Torquato was thereafter sentenced to four years' imprisonment and a fine of $10,000.

Two other individual defendants also pled guilty, but Smith and co-defendant Alan R. Stoneman proceeded to trial. After a three-month trial, a jury convicted both. Smith was found guilty of one count of conspiracy, 18 U.S.C. § 371 (1982), five counts of interstate transportation in aid of racketeering, 18 U.S.C. § 1952 (1982), and three counts of mail fraud, 18 U.S.C. § 1341 (1982). The court thereafter sentenced Smith to twelve years of imprisonment and imposed a $63,000 fine.[1] This court affirmed the conviction, and the Supreme Court denied certiorari.

After his conviction and sentencing, Smith entered into an agreement with the government whereby, in exchange for his cooperation in the future prosecution of cases arising out of the bribery scheme, the government agreed not to prosecute Smith's wife and to join Smith in a Rule 35 motion for reduction of sentence. Any evidence or testimony provided by Smith was to be subject to an immunity order previously entered by the district court in accordance with 18 U.S.C. §§ 6002 and 6003 (1982), the federal witness immunity statute. That order, mirroring the language of section 6002, provided, in relevant part, that "no testimony or other information compelled under this Order (or any information directly or indirectly derived from such testimony or other information), may be used against the witness in any criminal case, except a prosecution for perjury, giving false statement, contempt, or otherwise failing to comply with this Order." App. at 61.

Thereafter, Smith provided what the government agreed was "substantial cooperation." App. at 81. That cooperation culminated in Smith's trial testimony against Dwyer and Asher, which contradicted Smith's earlier testimony at his own trial. After testifying, Smith suffered a serious heart attack. Dwyer and Asher were convicted; the government believes that Smith "was a crucial and outcome determinative witness insofar as the prosecution of Dwyer and Asher were concerned." App. at 85.

Smith filed a motion for reduction of sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure, in which the government joined. The district court denied the motion. The court stated that Smith "should have testified truthfully in the first place or not at all," and further explained that "[t]o reduce Smith's sentence to Torquato's would enable Smith to take his chances at trial, be convicted, recant his testimony, testify against others, and then be treated just like Torquato who admitted his guilt initially. We decline to be a party to such a device." App. at 152, 153.

On appeal, Smith argues that the district court improperly used immunized testimony against him; that the court abused its discretion in light of Smith's substantial post-conviction cooperation, his disproportionate sentence compared to that of his co-defendants, and the deterioration of his health and his finances; and that the court relied on misinformation regarding Smith's eligibility for parole in ruling on the motion. In his reply brief, Smith contends that the case should be remanded to the district court for consideration of the effect

---

**1.** The component prison terms were as follows: five years on the conspiracy count, to which a five-year sentence on one count of mail fraud and two five-year sentences on two counts of interstate transportation were concurrent; a consecutive sentence of five years' imprisonment on one count of mail fraud, to which five-year sentences on two counts of interstate transportation were concurrent; and a consecutive sentence of two years on the final count of mail fraud, to which a two-year sentence on one count of interstate transportation was concurrent.

of the Supreme Court's decision in *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which was announced after this appeal was filed.

## II.

### *Use of Immunized Testimony*

■ We consider first Smith's contention that the district court improperly relied on his post-conviction immunized testimony. Smith's agreement with the government adopted the court's previously entered immunity order, which in turn incorporated certain provisions of the federal witness immunity statute, including 18 U.S.C. § 6002.

Section 6002 provides that "no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case...." 18 U.S.C. § 6002. Although Smith's testimony in the Asher/Dwyer trial was not compelled, we construe the agreement incorporating the immunity order to mean that Smith is entitled to the same protection under the order as if his testimony had been compelled.

■ Smith contends that the district court used his immunized testimony against him when it concluded that he had lied at his own trial, which was one of the factors the court mentioned in denying Smith's motion to reduce his sentence. Smith's argument is based on a number of fallacies. First, there is no factual basis for Smith's supposition that his perjury in his own trial became evident to the court only as a result of his retraction of that testimony under immunity. On the contrary, the jury verdict against Smith demonstrated conclusively that his protestations of innocence from the witness stand were false. Furthermore, the government, relying on the holding in *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), that perjured testimony may be a basis for an enhanced penalty, had emphasized Smith's perjured testimony when it filed its sentencing memorandum after Smith's conviction. Because, there-fore, the record in this case discloses a firm independent basis for the district court's knowledge of Smith's perjury at his own trial, we cannot conclude that the district court used Smith's immunized testimony at all. *Cf. Kastigar v. United States*, 406 U.S. 441, 460, 92 S.Ct. 1653, 1664, 32 L.Ed. 2d 212 (1972) (prosecution may be brought subsequent to defendant's immunized testimony when evidence used is derived from a source independent of the compelled testimony).

Second, Smith himself asked the court to consider his immunized testimony by basing his Rule 35 motion for reduction on the fact of his cooperation. Once Smith urged the district court to grant him leniency on the basis of his cooperation in testifying, Smith cannot now complain that the court erred because it took that testimony into account. In an analogous situation, the Court of Appeals for the Seventh Circuit held that the district court could consider defendant's immunized grand jury testimony in imposing a sentence when the defendant himself had offered a transcript of that testimony into evidence during the trial. *United States v. Patrick*, 542 F.2d 381, 392 (7th Cir.1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). The court explained that the defendant "should not be allowed to complain about the Judge's exposure to his grand jury testimony in light of his own use of portions thereof as part of his defense." *Id.* The same analysis is applicable here.

Finally, it is difficult to find incrimination in the context of the procedural setting here. At the time of his immunized testimony, Smith had already been convicted and sentenced. He could not be subjected to further criminal penalty on those crimes. The proceeding before the district court on the motion to reduce sentence was not one to impose a criminal penalty, but to relieve him from one. The failure to reduce a sentence is not equivalent to the imposition of a criminal penalty; if there can be no criminal penalty, there can be no incrimination. *See Allen v. Illinois*, 478 U.S. 364, 106 S.Ct. 2988, 2994–95, 92 L.Ed.2d 296 (1986). We thus conclude that there was

no use of Smith's testimony in violation of section 6002.[2]

### III.

#### *Abuse of Discretion*

Smith recognizes that this court reviews the district court's denial of a Rule 35 motion only for a "clear abuse of discretion," *see Government of Virgin Islands v. Gereau*, 603 F.2d 438, 443 (3d Cir.1979), consistent with our jurisprudence that sentencing, absent illegality or defective procedure, is a matter committed to the trial court. *See Dorszynski v. United States*, 418 U.S. 424, 440–42 & n. 14, 94 S.Ct. 3042, 3051–52 & n. 14, 41 L.Ed.2d 855 (1974); *United States v. Matthews*, 773 F.2d 48, 52 (3d Cir.1985). Nonetheless, Smith argues that "exceptional circumstances" are presented here. Appellant's Brief at 18. He points to the four grounds that he raised in the district court as warranting reduction of sentence: the disproportionality of his sentence as compared to that given his co-defendants, his poor health, the professional and financial hardship he has faced, and his post-conviction cooperation. The first three require little discussion.

#### A.

■■■ A criminal defendant has no constitutional right to be given a sentence equal in duration to that of his or her co-defendants. *See generally Dorszynski v. United States*, 418 U.S. 424, 440–41, 94 S.Ct. 3042, 3051, 41 L.Ed.2d 855 (1974). The district court recognized that Smith's sentence was triple to Torquato's, but believed that was proper in light of their different positions. Torquato had pled guilty to only one count that bore a maximum of five years' imprisonment, whereas Smith was convicted on nine counts. The court also stated that Smith's perjury in the first trial appeared to the court de-

signed to further either the old conspiracy or a new one to obstruct justice. App. at 152. We cannot say that the trial court's decision to treat Smith and Torquato differently based on what were valid differences in circumstances constituted an abuse of discretion. *See United States v. Dansker*, 581 F.2d 69, 74–75 (3d Cir.1978) (court of appeals should "not disturb the sentencing court's exercise of its broad discretion" in imposing a longer sentence on one defendant than on another).

We find equally unpersuasive Smith's arguments based on his poor health and financial and professional hardship. The district court carefully considered these factors and concluded that they did not warrant a reduction of sentence. That conclusion was well within its discretion.

#### B.

The most troublesome argument Smith raises is that the district court failed to credit properly his substantial post-conviction cooperation. The government's position on this issue is not straightforward. On one hand, the government opposes Smith's appeal and asserts that the district court's denial of his Rule 35 motion was not an abuse of discretion. On the other hand, the government, "concerned that [Smith's] cooperation was not given some weight," argues that the court's refusal to recognize Smith's substantial cooperation "will have a future adverse effect on the Government's ability to investigate similar matters in the future." Appellee's Brief at 26, 28. While we are sensitive to the competing policies that the prosecutor must weigh, we are disturbed by the government's lack of clarity and its failure to take a consistent position on this appeal.[3]

At the outset, we see nothing in the record to support Smith's suggestion that the district court imposed a flat ban on reduction of sentences in return for post-

---

2. In light of our holding we need not decide whether section 6002 is applicable to the sentencing stage of a criminal prosecution. *Cf. United States v. Fulbright*, 804 F.2d 847, 852–53 (5th Cir.1986) (immunized testimony may be used in connection with sentencing).

3. At oral argument, the government declined to state whether it was asking this court to reverse the district court.

conviction cooperation. Instead, we believe the district court weighed the circumstances presented to it in the context of this particular case. Although we probably would have come to a different conclusion than it did, the question before us is limited to whether the court's decision fell outside the permissible limits of its discretion.

In effect, Smith argues that the district court *must* reduce his sentence in return for his post-conviction cooperation. Our authority is to the contrary. *See United States v. Mariano*, 646 F.2d 856, 859 (3d Cir.) (no abuse of discretion for court to refuse to reduce sentence on the basis of defendant's post-conviction participation in the Federal Secret Witness Program), *cert. denied*, 454 U.S. 856, 102 S.Ct. 304, 70 L.Ed.2d 150 (1981). The authority upon which Smith relies holds only that a sentencing court *may* consider a defendant's lack of cooperation with the government, *see Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980), or a defendant's perjury, *see United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). *See also Scarbeck v. United States*, 317 F.2d 546 (D.C.Cir.) (cooperation may be considered as basis for reduction of sentence), *cert. denied*, 374 U.S. 856, 83 S.Ct. 1897, 10 L.Ed.2d 1077 (1963); *United States v. Unterman*, 433 F.Supp. 647 (S.D.N.Y.1977) (same). These cases expand the court's sentencing discretion; Smith's interpretation would contract it. Thus, there is no authority to support Judge Becker's remarkable conclusion that the district court *must* give some weight to the defendant's post-conviction cooperation. *See* Dissent *infra* at 183.

Even the Comprehensive Crime Control Act of 1984, which was not applicable to Smith, would not change this result. Although Congress has greatly circumscribed the courts' sentencing discretion, *see, e.g.,* 28 U.S.C. § 991 *et seq.* (Supp. III 1985) (establishing independent sentencing commission to establish national sentencing policies and practices), it nonetheless has left the district courts with discretion to decide whether, and to what extent, to reward a defendant's cooperation.[4] *See* 18 U.S.C.A. § 3553(e) (West Supp.1987) (effective November 1, 1987) (court "shall have the authority" to impose sentence below statutory minimum "so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense"). Similarly, Fed.R.Crim.P. 35(b), as amended effective November 1, 1987, specifically refers to post-conviction cooperation as a basis for reduction of sentence but continues to vest discretion in the trial court to reduce a defendant's sentence for that cooperation.[5]

Thus, although all roads lead to a recognition of the government's need to elicit cooperation, none of them, even if they were applicable to the instant proceeding, forecloses the district court from reaching the decision it made here. That court was cognizant that Smith's earlier refusal to cooperate required the government to proceed to a three month trial, at which the two defendants called seventy defense witnesses. In denying Smith's motion for reduction of sentence based on Smith's later cooperation notwithstanding the government's joinder in the motion, the court commented that it saw its role as

---

4. For example, in establishing the sentencing commission and authorizing it to promulgate national sentencing guidelines, 28 U.S.C. §§ 991 *et seq.*, Congress directed the Commission to "assure that the guidelines ... take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 28 U.S.C.A. § 994(n) (West Supp.1987). Pursuant thereto, the Commission promulgated a guideline that provides that "[u]pon motion of the government stating that the defendant has made a good faith effort to provide substantial assistance in the investigation or prosecution of another person

who has committed an offense, the court *may* depart from the guidelines." United States Sentencing Commission Guidelines Manual § 5K1.1 (effective November 1, 1987) (emphasis added).

5. Amended Rule 35(b) provides, in relevant part, "[t]he court, on motion of the Government, *may* ... lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense." Fed.R.Crim.P. 35(b) (emphasis added).

making "the trial ... as fair as it is humanly possible" rather than as "an adjunct of the Department of Justice." App. at 152. It was in the context of this concern with the integrity of the trial process that the district court stressed Smith's perjured testimony.[6]

The dissent can point to no statement by the district court that it ignored Smith's cooperation. In light of this court's precedent holding that a district court need not articulate its reasons for the sentence imposed, see United States v. Bacheler, 611 F.2d 443, 450 (3d Cir.1979); United States v. Del Piano, 593 F.2d 539, 540 (3d Cir.), cert. denied, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979), we could not logically require the district court to engage in an on-the-record balancing on a motion to reduce the sentence.

Indeed, we believe that the district court did engage in an implicit balancing, which is reflected by the fact that it chose to articulate those factors that it found most significant. One such factor was the severity of the crime, since the district court stated that, "[i]t is our carefully considered view that in a crime of this magnitude Smith's sentence was fair when imposed and remains a proper one." App. at 153. In fact, the crimes of which Smith was convicted were substantial and violative of the public trust.

It is evident that the district court chose to give more weight to the policy of deterring criminal conduct like Smith's than to that of encouraging persons who engage in such conduct to cooperate with the government after they are convicted. Since we have already rejected "a general rule that a sentencing court must accede to a plea for leniency proffered by any defendant who in some respect 'cooperates' with the government," United States v. Mariano, 646 F.2d at 859, we cannot say that, given the circumstances of this case, the district court's failure to reduce Smith's sentence on the grounds of his cooperation was an abuse of discretion.[7]

## IV.

### The Effect of McNally v. United States

Smith's final contention is that the Supreme Court's decision in McNally v. United States, — U.S. —, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987), holding that 18 U.S.C. § 1341, the mail fraud statute, is "limited in scope to the protection of property rights," renders invalid his mail fraud and conspiracy convictions because they were based on intangible rights objectives. He also contends that those objectives so infected the interstate transportation counts as to nullify them as well. We do not reach the merits of Smith's argument because we find that Rule 35 is not the appropriate forum in which to raise it.

Although the language of Rule 35(b), on which Smith relies, does not specify the grounds for reduction of sentence,[8]

---

6. Judge Becker believes that Smith's post-conviction cooperation was "most extraordinary." Dissent infra at 183. Was it not instead extraordinary for an attorney, who was after all an officer of the court, and a man who had been placed in a position of respect by his political party to have chosen to take the witness stand and perjure himself before the jury and the court?

7. Smith also contends that the district court denied him his due process rights because the court was confused about the impact of a reduction of sentence on his eligibility for parole. Nothing pointed to in the record by Smith demonstrates that Judge Muir, after 16½ years' service as a federal judge handling many of the cases arising out of the two large federal penal institutions in his district, in any way misunderstood the effect of his decision on Smith's parole eligibility.

8. At the time relevant to this litigation, Rule 35(b) provided that:

A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

Rule 35(b) was amended in 1984, effective November 1, 1987, as part of the Comprehensive

its provisions have been uniformly construed to be limited to consideration of the validity of a sentence itself.[9] Courts have refused to consider claims under the rule that involve the merits of the defendant's conviction. *See United States v. Colvin,* 644 F.2d 703, 705 (8th Cir.1981); *United States v. Cumbie,* 569 F.2d 273, 274 (5th Cir.1978); *see generally* 3 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 586 (2d ed. 1982) (a Rule 35(b) motion " 'is essentially a plea for leniency and presupposes a valid conviction' ") (quoting *Poole v. United States,* 250 F.2d 396, 401 (D.C.Cir.1957)); *cf. Hill v. United States,* 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962) ("the narrow function of Rule 35 is to permit correction at any time of an illegal sentence, not to re-examine errors occurring at the trial or other proceedings prior to the imposition of sentence"); *Green v. United States,* 365 U.S. 301, 306 n. 3, 81 S.Ct. 653, 656 n. 3, 5 L.Ed.2d 670 (1961) ("Rule 35 does not encompass all claims that could be made by direct appeal attacking the conviction, but rather is limited to challenges that involve the legality of the sentence itself").

Because Smith's *McNally* argument clearly goes to the validity of his conviction, not that of his sentence, it is not within the ambit of Rule 35.[10] Smith advised us that he filed a motion pursuant to 28 U.S.C. § 2255 raising the *McNally* issue, and presumably the merits of his claim will be before us should Smith appeal from the district court's decision on that motion.[11]

---

Crime Control Act, Pub.L. No. 98–473, 98 Stat. 1976, 2015–16.

**9.** Smith's motion is a motion to reduce, not correct, his sentence. There is no suggestion that Smith's sentence was either illegal or imposed in an illegal manner. Therefore, the provisions of subsection (a) of Rule 35 permitting the correction of illegal sentences, as opposed to the reduction of legal ones under Rule 35(b), are inapplicable.

**10.** In light of our conclusion, we do not consider whether Smith failed to meet the 120–day requirement of Rule 35(b), which is "jurisdictional and cannot, under any circumstances, be extended by order of the court." *United States v. Robinson,* 457 F.2d 1319 (3d Cir.1972) (per curiam).

## V.

### Conclusion

For the foregoing reasons, the order of the district court will be affirmed.

BECKER, Circuit Judge, concurring and dissenting.

I join in Parts I, III A, and IV of the majority's opinion. I would also join in Parts II and III B if I believed that the majority had properly assessed the essential predicates of the district court's ruling. In my view, however, it did not, rendering the majority's opinion fatally flawed. As I will explain, the majority has ignored both the district court's stated unwillingness to give some weight to Smith's cooperation and its reliance on Smith's immunized admission of perjury.

### I.

The linchpin of the majority's conclusion that the district court did not abuse its discretion in failing to reduce Smith's sentence pursuant to his Rule 35 motion is its statement that:

The crimes of which Smith was convicted were substantial and violative of the public trust. The district court did not ignore Smith's cooperation. It instead chose to give more weight to the policy of deterring criminal conduct like Smith's than to that of encouraging persons who engage in such conduct to cooperate with the government after they are convicted.

---

**11.** We have been furnished by counsel with the court's opinion denying Smith's motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255 on the ground, *inter alia,* that this was not an intangible rights case but instead "the heart of the scheme or artifice to defraud was to influence through bribery the awarding of a no-bid contract at an inflated price to the monetary prejudice of the Commonwealth of Pennsylvania and the school districts who would pay inflated commissions under the contract let by the Treasurer of Pennsylvania." *United States v. Smith,* 675 F.Supp. 978, 981 (M.D.Pa.1987). We express no opinion on this issue.

Maj. op. at 181. I simply cannot agree that the majority has accurately characterized the district court's action.

No language in the district court's opinion suggests that it balanced cooperation and deterrence. Rather, that is the gloss the majority has put on the district court's decision. I demonstrate this by rescribing the district court's central statement:

> The U.S. Attorney asserts that Smith's testimony in the second trial was of great value to the government and that without it neither the State Treasurer nor the Republican State Chairman would have been found guilty. That may be correct but does not mean that we should reward Smith for his testimony. *He should have testified truthfully in the first place or not at all.*

. . . .

> To reduce Smith's sentence to Torquato's would enable Smith to take his chances at trial, be convicted, recant his testimony, testify against others, and then be treated just like Torquato who admitted his guilt initially. *We decline to be a party to such a device.*

App. at 152, 153 (emphasis added). If the able and experienced district judge was engaging in a balancing exercise he would have said so. In my view (and in the government's, *see infra* dissent at 184) it is clear that the district court did not engage in a balancing, but rather refused to consider cooperation at all. By announcing (or at least applying) an inflexible "it's too late" rule, the district court demonstrated hostility to cooperation that is not only wooden and unprecedented, but also contravenes the policies enunciated in the Supreme Court's jurisprudence and the statutory law. The outright rejection of cooperation as a consideration constituted legal error, hence I would reverse and direct the court to reconsider the Rule 35 motion, taking Smith's cooperation into account.

In the average white collar crime case, and in virtually every political corruption case, the defendant will take the witness stand. In many cases, as in this one, he will also be convicted. There will be times when the cooperation of such a defendant/witness is critical to continuation of the investigation and the government will seek it, notwithstanding his putative perjury at trial. By saying that when cooperation comes at the time Smith's cooperation came, it is too late, the district court has neutered the government's ability to promise a defendant who has been convicted after testifying on his own behalf that it will go to the court and seek leniency in exchange for future truthful testimony. As a result, the affirmance of the district court's order will make it difficult for the government to secure cooperation of defendants in Smith's position in the future.

The cooperation in this case was not ordinary cooperation. It was not just "substantial." Rather it was most extraordinary, and it "made" the government's case in one of the most important and highly publicized political corruption cases in Pennsylvania history. In my view, the sentencing court cannot arbitrarily refuse to at least consider such cooperation, as it did here. The policy of the law favoring the grant of sentencing concessions for cooperation is undoubted. It is derived from the decades of common experience and understanding of the "key players" in the criminal justice system—prosecutors, defense lawyers and judges. The policy has at least inferentially been recognized by the Supreme Court. *See Roberts v. United States,* 445 U.S. 552, 557–58, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980) (holding that failure to cooperate with a criminal investigation is relevant to the sentencing decision); *United States v. Grayson,* 438 U.S. 41, 50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978) (reviewing the need for the broadest possible consideration of the defendant's characteristics and actions in the sentencing decision).

Equally important, the policy favoring cooperation has now been enshrined by the Congress in the Sentencing Reform Act:

> The [Sentencing] Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be im-

posed, *including a sentence that is lower than that established by statute as minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.*

28 U.S.C. § 994(n) (West Supp.1987) (emphasis added). The United States Sentencing Commission, faithful to the statutory command, has provided in the Sentencing Guidelines that substantial assistance to authorities may be a ground for departing from the otherwise applicable guideline range.[1] Cooperation thus becomes one of the very few bases under the Sentencing Guidelines for which a defendant may receive probation regardless of the seriousness of the offense.

The position of the government in this case strongly supports my view. The government first notes that the district court's announced standard may deter future cooperation:

the continued success of this approach [to prosecute the bribe givers and takers rather than offer immunity early on] depends on judicial recognition that truthful and complete cooperation is entitled to some type of consideration at the time of sentencing. Government counsel is extremely concerned that Appellant Smith's cooperation was not given some weight when his motion to reduce came under judicial consideration.

. . . .

To fail to give recognition to subsequent cooperation creates the impression that the prosecution is not dealing in good faith and in relation to the involved citizen/defendant attempting to "have its cake and eat it," i.e., obtain cooperation but not give any recognition of its value.

. . . .

The ultimate refusal by the District Court to give any recognition whatsoever to the Appellant Smith's substantial cooperation will have a future adverse effect on the Government's ability to investigate similar matters in the future.

Appellee's Br. at 26–28.

Second, the government questions whether the district court's announced standard as to Smith is a "farsighted exercise of discretion." Appellee's Br. at 29. The government notes that:

The prosecution has attempted to vindicate the public interest in this matter by refusing Smith's persistent importuning for immunity, trying him, convicting him, and recommending a lengthy term of imprisonment, which we agree was fully justified at the time under the facts of this case. But numerous other considerations indicate that for this investigation to be fully successful vis a vis the public interest, it had to go to the upper levels of the public officials criminally involved with this corrupt endeavor through the truthful cooperation of Appellant Smith. These considerations included the seriousness of the possible offenses committed by high public officials then under investigation, the desirability of a prompt disposition of all cases arising out of this matter, the enhanced chances of developing all available evidence to aid the juries called upon to resolve these matters, and the fact that the appellant Smith's coop-

---

1. § 5K1.1 Substantial Assistance to Authorities (Policy Statement) states in pertinent part:

Upon motion of the government stating that the defendant has made a good faith effort to provide substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following conduct:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

eration would simplify the issues while fully vindicating the public's right to have corrupt dealings by high public officials fully exposed at a public trial. All of which would raise the level of deterrence derived from the case. Smith's cooperation vindicated these policy considerations in an exceptional way because of his unique position as a long standing Republican Chairman of Dauphin County and his personal knowledge of the influence-selling scheme then under investigation. To refuse to reduce his sentence when he ultimately cooperates, while enhancing it based on his perjured testimony at trial, creates the impression of a one-way street which will make it extremely difficult to attempt to vindicate the above-described public interests in future similar cases.

Appellee's Br. at 29–30.

I do not disagree with the majority that the trial court always retains the discretion whether to reduce a defendant's sentence for cooperation. Had the district court actually engaged in balancing, and in effect said that Smith's cooperation was not sufficient to outweigh his serious misdeeds, I would have joined the majority because I could not then find an abuse of discretion. The district court did not engage in such balancing, however, and in light of the important considerations discussed above, I cannot join in affirming the district court's decision.

## II.

The majority's conclusion that the district court did not improperly consider Smith's immunized testimony rests on the statement that the jury verdict against Smith demonstrated conclusively that his protestations of innocence from the witness stand were false. Maj. op. Typescript at 6. Again, with all respect, that is not what the district court said that it did. Rather the district court stated:

> After losing his appeals, Smith changed his tune. He offered to testify

truthfully against others if the government would refrain from prosecuting his wife and would join in Smith's motion to reduce his sentence to that served by Torquato. The government accepted the offer. There has been no prosecution of the wife. *Smith, acknowledging in the second trial that his testimony in his own trial was false,* testified against the State Treasurer and the State Chairman of the Republican party, both of whom were found guilty.

> There is yet another important distinction between Torquato and Smith. By the time of the first trial, Torquato had withdrawn from the conspiracy. In contradistinction, Smith's perjury in the first trial was an additional illegal act which appears to us to have been designed to further either the old conspiracy or a new conspiracy to obstruct justice. Smith's sentence was substantially greater than Torquato's and properly so.

App. at 150–52 (emphasis added).

Although the district court's statement of reasons may be less than pellucid, the court neither stated nor implied that the jury's verdict, rather than Smith's immunized admission of perjury, persuaded it that he had perjured himself at the first trial. Only the testimony at the second trial is mentioned and it is clear to me that that formed the basis of the district court's decision. If so, assuming that immunized testimony may not be considered in connection with sentencing,[2] the district court's reliance on the immunized testimony constitutes an additional ground for reversal, compounding the ground I have discussed in Part I. In effect, the district court used Smith's immunized admission of perjury to "cut off at the pass" any consideration of his cooperation. On remand and resentencing, I would also direct the district court not to take Smith's admission of perjury at the first trial into account.

I respectfully dissent.

**2.** The majority declines to address this question, *see* maj. op. *supra* at 179 n. 2, but notes that the Court of Appeals for the Fifth Circuit held in

*United States v. Fulbright,* 804 F.2d 847, 852–53 (5th Cir.1986), that immunized testimony may be used in connection with sentencing.