**UNITED STATES of America, Plaintiff,**

v.

**Dennis Bryan FEDERICO, Defendant.**

**No. CR 88–0085 TEH.**

United States District Court,
N.D. California.

Sept. 2, 1988.

Joseph P. Russoniello, U.S. Atty., Robert D. Ward, Chief, Crim. Div., and Jeffrey W. Lawrence, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

Chris P. Andrian, Santa Rosa, Cal., for defendant.

## ORDER

THELTON E. HENDERSON, District Judge.

This matter comes before the court on defendant Dennis Federico's motion to declare Fed.R.Crim.P. 35(b) and 18 U.S.C. § 3553(e) unconstitutional. After careful consideration of the parties' papers and oral arguments of counsel, we hereby grant the motion, and order sentencing procedures in accordance with this Opinion.

In June 1988, Federico plead guilty to a violation of 21 U.S.C. § 841(a)(1) for possession with intent to distribute cocaine. The penalty for that violation ranges from a mandatory minimum of ten years imprisonment to a maximum sentence of life imprisonment. 21 U.S.C. § 841(b)(1)(A).

Defendant contends that two criminal code provisions could be applied in his case to possibly reduce his sentence below the ten year minimum. 18 U.S.C. § 3553(e) allows a court to "impose a sentence below a level established by statute ... so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." Similarly, Fed.R.Crim.P. 35(b) permits a court to reduce an already established sentence to reflect a defendant's subsequent assistance with law enforcement officials.

However, both of these provisions contain an unusual feature: before the court has the power to reduce a sentence, the government must trigger these provisions by filing a motion. 18 U.S.C. § 3553(e) states that "[u]pon motion of the government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence." Rule 35(b) contains substantially similar language.

Federico challenges the constitutionality of these triggering clauses.[1] He argues

---

**1.** Given the considerable confusion over whether the Sentencing Guidelines are constitutional, we are not certain that 18 U.S.C. § 3553(e) is still a valid statute. The Ninth Circuit has recently invalidated the sentencing guidelines. This statute applies to sentences with either stat-

that these clauses impermissibly allow the prosecutor to intrude upon judicial power, since the judge's statutory authority to reduce a sentence hinges upon prosecutorial approval. This prosecutorial veto is said to violate our constitutionally required separation of powers.

*Standing.*

■ We first confront whether Federico has standing to make this challenge. He concedes that he has not yet offered any information and the prosecutor has not even had an opportunity to exercise this "veto" power. However, we still find that he has standing to contest these clauses. Defendant has declared his intent to offer information, and alleges that he will incur risks to his family and himself by this divulgence. Because of the triggering clauses, he has no guarantee that this Court will be appraised of his assistance when we pass sentence upon him: the prosecutor may determine that Federico's information does not constitute substantial assistance and decline to file a motion. Indeed, if the prosecutor chose not to file such a motion, the Court would be prohibited from reducing Federico's sentence even if Federico independently brought his assistance to our attention. Thus, Federico fears incurring the risk of assistance and not enjoying its possible benefit.[2]

We believe this dilemma gives defendant standing to bring this motion. Defendant deserves to know whether the government may constitutionally veto our exercise of the sentence reduction provisions before he incurs the risk of divulging information. This holding accords with our finding of standing in *United States of America v. Myers*, 687 F.Supp. 1403, 1409 (1988), in

which we held that a defendant could challenge the sentencing guidelines before deciding whether to plead guilty to a charged offense.

*Separation of Powers Analysis.*

To determine whether the triggering clauses violate the separation of powers doctrine, we examine the "expansion" and "impairment" prongs of the doctrine. We inquire whether a statutory scheme "impermissibly grants one branch [of government] the authority to exercise powers properly belonging to another branch." *Jose Gubiensio-Ortiz v. Kanahele*, 857 F.2d 1245, 1250 Slip Op. at 12 (9th Cir. August 23, 1988), citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587–589, 72 S.Ct. 863, 866–67, 96 L.Ed. 1153 (1952). We also consider whether the scheme "prevents [the affected branch] from accomplishing its constitutionally assigned functions" and if so, whether that impairment is justified by "an overriding need to promote objectives within the constitutional authority of Congress." *Nixon v. Administrator of General Services*, 433 U.S. 425, 433, 97 S.Ct. 2777, 2785, 53 L.Ed.2d 867 (1977).

In this case of first impression, we begin with the basics: sentencing criminal defendants is a quintessentially judicial function. The legislature prescribes the overall range of penalties, the executive investigates, indicts, and presents the relevant facts to the court and jury, and the judiciary metes out a sentence by applying the statutory penalties to the facts presented in each case. In the past, federal judges have had almost unfettered discretion to determine the appropriate penalty within an expansive range of penalties. *United States v. Gray-*

---

utory minimum prison terms or minimum terms prescribed by the Sentencing Commission. Thus, it could be argued that this section still applies to statutory mandatory minimums, even if the guidelines are struck down. However, the section states that in reducing a sentence, the district court shall follow "the guidelines and policy statements issued by the Sentencing Commission." This clause suggests that this section is not severable from the guidelines; if they are struck down, this statute is invalidated as well. However, since Rule 35(b) is clearly severable from the sentencing guidelines, and since we are not certain whether the Ninth

Circuit intended to strike down 18 U.S.C. § 3553(e), we find that defendant's challenge has not been mooted by the controversy over the guidelines.

2. The Court inquired at oral argument whether this dilemma could be cured by defendant describing the general nature of the information to the prosecutor and receiving the prosecutor's appraisal before divulging the information. Neither side indicated that this method would work.

*son*, 438 U.S. 41, 46, 98 S.Ct. 2610, 2613, 57 L.Ed.2d 582 (1978). That discretion has been circumscribed by the promulgation of the sentencing guidelines and statutory mandatory minimum sentences such as those contained in the 1986 Anti–Drug Abuse Act, 21 U.S.C. 841(a)(1). However, even under this new regime, sentencing remains "primarily a judicial function." Senate Report Number 225, 98th Cong., 1st Sess. 37, 159, reprinted in 1984 U.S.Code Cong. & Administrative News 3182.

█ To outline this elementary separation of powers and duties is almost to decide this case: the triggering clauses inject the prosecutor directly into the judge's sentencing role. If the prosecutor decides that a defendant's assistance is not sufficiently substantial, the prosecutor may decline to file a motion for a reduced sentence. If the prosecutor so decides, the judge is utterly powerless to reduce that defendant's sentence on those grounds, no matter how convinced the judge is that the defendant has cooperated. Moreover, the provisions do not provide for judicial review of the prosecutor's decision not to move for sentence reduction. Therefore, there is no question that these clauses give the prosecutor a veto power of a judge's sentencing options. While the government correctly argues that the judge is the final decisionmaker *if* the government moves for sentence reduction, the government ignores the fact that *the prosecutor* is the final decisionmaker if he/she decides *not* to move for sentence reduction.

Similarly, the government erroneously oppugns defendant's challenge by asserting that he has no constitutional right to sentence reduction. There are many rights we possess that are not enshrined in the constitution, but may nevertheless not be rescinded by the unilateral decision of a law enforcement official. For example, a citizen has a right to a driver's license. No constitutional provision ensures that right, but a policeman may not take the citizen's license away because she determines that the driver is reckless.

Here, Congress has provided a statutory right to apply for a reduced sentence.

Congress could have chosen not to provide such a right at all; if so, Federico would have no constitutional challenge to present to us. However, once Congress decided to afford this right, its exercise becomes subject to the constitutionally-commanded separation of powers.

While we find no closely similar federal case, several California courts have struck down statutes with almost identical infirmities. For example, in *People v. Tenorio*, 3 Cal.3d 89, 89 Cal.Rptr. 249, 473 P.2d 993 (1970), Justice Peters, writing for a unanimous Supreme Court, invalidated a statute that provided for a similar prosecutorial veto. The defendant in *Tenorio* was convicted for marijuana possession. Section 11530 of the Cal. Health & Safety Code prescribed a minimum two year sentence for defendants with prior convictions for that same offense, but no minimum in the absence of a prior conviction. Section 11718 required the prosecutor to file a motion to strike any prior convictions. The prosecutor declined to file such a motion in this case. Despite Section 11718's requirement, the trial court dismissed the allegation of a prior conviction. 3 Cal.3d at 91, 89 Cal.Rptr. 249, 473 P.2d 993.

The government appealed, and the defendant challenged section 11718 on separation of powers grounds. The court first agreed that the statute conditions the exercise of judicial power "upon a prosecutor's prior approval." *Id.* at 94, 89 Cal.Rptr. 249, 473 P.2d 993. The court then noted that this power-sharing arrangement fundamentally impairs the judicial power: "[t]he judicial power is compromised when a judge, who believes that a charge should be dismissed in the interests of justice, wishes to exercise the power to dismiss but finds that before he may do so he must bargain with the prosecutor." *Id.*

The statute also expands prosecutorial power in dangerous directions: "[w]hen an individual judge exercises sentencing discretion, he exercises a judicial power which must be based upon an examination of the circumstances of the particular case before him, and which is subject to review for abuse." *Id.* at 95, 89 Cal.Rptr. 249, 473

**1012**

P.2d 993. In stark contrast, "the discretion section 11718 purports to vest in prosecutors is unreviewable, and may therefore be exercised in a totally arbitrary fashion." *Id.*[3]

Thus, the court found no justification for "vesting in a partial advocate, the prosecutor, the power to prevent the exercise of ... judicial discretion." *Id.* at 95, 89 Cal. Rptr. 249, 473 P.2d 993. The court struck down the statute.[4]

We can do little to improve upon Justice Peters' words, and we note the strong similarity between the triggering clauses of the instant provisions and the statute at issue in *Tenorio*. The California and federal provisions share the identical infirmity: the prosecutorial veto diminishes a judge's power to weigh all statutorily identified factors prior to sentencing a defendant.

Several federal cases also address the separate roles of judges and prosecutors in sentencing decisions and counsel us to strike the instant provisions.

For example, in *United States v. Brennan*, 629 F.Supp. 283 (E.D.N.Y.1986), the government requested a very heavy sentence to induce the defendant to cooperate in an ongoing criminal investigation in exchange for a subsequently reduced sentence. The court rejected this "coercive" sentencing approach. The court eschewed a blurring of the prosecutorial and judicial functions, noting that a judge reduces a defendant's sentence for cooperation because such cooperation tends to suggest rehabilitation. *Id.* at 304. In contrast, the prosecutor uses tools other than sentencing to encourage a defendant's assistance, such as use immunity coupled with contempt proceedings. The two should be separated, since techniques to coerce cooperation are *"prosecutorial, not judicial tools."* *Id.* at 305, emphasis in original. Moreover, "courts do not willingly embrace the role of indirectly coercing future defendants" since "the judge takes a dangerous step—

however small—out of his neutral path towards that of the prosecutor." *Id.*

Similarly, in *United States v. Smith*, 839 F.2d 175, 180–181 (3rd Cir.1988), the court upheld the district court's denial of a Rule 35(b) motion. Both the defendant and the prosecutor argued that the defendant had substantially assisted in a criminal investigation by testifying against two co-conspirators. The district court nevertheless denied the motion. It noted that the defendant had previously refused to testify against the co-conspirators, necessitating a three month trial for these co-conspirators. The court also considered the severity of defendant's crime, and the fact that defendant perjured himself during the proceedings.

The Third Circuit upheld the district court's decision. It observed that Rule 35(b) was intended to "vest discretion in the trial court to reduce a defendant's sentence," Id. at 180, and that the trial court properly "saw its role as making 'the trial ... as fair as it is humanly possible' rather than as 'an adjunct of the Department of Justice.'" *Id.* at 180–181.

A recently decided Supreme Court case also highlights the importance of judicial independence from the government. In *Young v. U.S. ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), the court rejected a contemnor/defendant's argument that the district court lacked the authority to appoint private counsel to pursue contempt proceedings against that defendant. The defendant maintained that the court could only request a United States Attorney to pursue the contempt action, and that if the United States refused the request, the contempt action could not proceed. *Id.* 107 S.Ct. at 2130.

The court soundly rejected this argument, finding that such a limitation on the power of the district court would under-

---

**3.** We do not imply that this particular prosecutor would arbitrarily apply this provision. However, our confidence in this prosecutor does not save a constitutionally invalid provision.

**4.** *See also People v. Navarro*, 7 Cal.3d 248, 102 Cal.Rptr. 137, 497 P.2d 481 (1972) striking down law requiring district attorney to concur before a convicted drug abuser may be placed in a treatment facility.

mine the judge's inherent authority to ensure compliance with court orders. As Justice Brennan stated, "[c]ourts cannot be at the mercy of another branch in deciding whether [contempt] proceedings should be initiated." Id. at 2131. He continued: "[i]f the judiciary were completely dependent on the Executive Branch to redress direct affronts to its authority, it would be powerless to protect itself if that branch declined prosecution." *Id.* at 2134.

While these cases arise in different factual contexts, they attest to the importance of separating prosecutorial and judicial functions. In *Brennan,* the court refused to sentence a defendant to coerce future cooperation, observing that such coercion is a prosecutorial function. In *Smith,* the court rejected lowering a sentence because of a defendant's subsequent cooperation, holding that the judge, and not the prosecutor, must decide whether sentence reduction furthers the interests of justice. In *Young,* the Supreme Court rejected the argument that a court's inherent authority should be constrained by the ability of a prosecutor to refuse initiation of contempt proceedings.

Thus, all of these cases support our conclusion that a prosecutorial veto on judicial sentencing impermissibly blends two roles that must be kept separate and independent under our constitutional scheme.

This constitutional infirmity is no mere technical flaw: it is a matter of serious consequence to this defendant. Federico faces a mandatory minimum of ten years imprisonment with no possibility of parole or probation. His only hope for a reduction in this stiff sentence is to cooperate with the prosecutor by offering information. This hope is grounded in a statutory right: Congress has decided to encourage cooperation by rewarding substantial assistance. Congress subverts this statutory policy—and dashes this defendant's last hope—by conditioning the statute's operation on the unreviewable discretion of the defendant's adversary.

Justice Scalia noted recently that "[i]t is the proud boast of our democracy that we have 'a government of laws and not of men.'" *Morrison v. Olson,* 487 U.S. 654, 108 S.Ct. 2597, 2622, 101 L.Ed.2d 569 (1988) (Scalia, J., dissenting). Justice Scalia traced that phrase from the 1780 Massachusetts Constitution, which states, *inter alia,* that "the executive shall never exercise the legislative and judicial powers ... to the end that it be a government of laws, and not of men." 108 S.Ct. 2622, citing Part the First, Article XXX of the Massachusetts Constitution of 1780.

The triggering clauses at issue here fundamentally assault this principle: they are unconstitutional, and must be stricken.[5]

*Severability.*

Our invalidation of the triggering clause does not require us to strike the remainder of Rule 35(b) and 18 U.S.C. § 3553(e). An unconstitutional provision "must be severed unless the statute created in its absence is legislation that Congress would not have enacted." *Alaska Airlines v. Brock,* 480 U.S. 678, 107 S.Ct. 1476, 1481, 94 L.Ed.2d 661 (1987).

Congress passed the statute (and the Supreme Court approved the Rule) to encourage defendants to cooperate with and assist law enforcement in its fight against crime. We presume the triggering clauses were enacted to reflect the fact that the prosecutor can best determine whether a defendant's assistance has been sufficiently helpful to justify sentence reduction.

■ Neither of these goals is defeated by severing the triggering clauses and leaving the remainder intact. We order the following procedure: defendant may divulge the information to the prosecutor. If the prosecutor then declines to file a Rule 35(b) motion, defendant may present the information to the court prior to sentencing. The defendant shall have the opportunity to argue why the information constitutes substantial assistance; the prosecutor shall also be entitled to argue why sentence reduction would be inappropriate.

---

**5.** Because we have invalidated these clauses on separation of powers grounds, we do not address defendant's other constitutional arguments.

We will show a considerable degree of deference to the prosecutor's appraisal of defendant's assistance, knowing that the government will be able to evaluate the information's efficacy more accurately than the Court.

We will then make a finding of fact regarding whether defendant's information constitutes substantial assistance. If we find in favor of Federico, we will take this factor into account when determining the appropriate sentence.[6]

This procedure follows the dual legislative intent to reward cooperation and defer to the government's appraisal of the proffered information. Unlike the unlawful triggering clauses, however, it properly separates the judicial and prosecutorial roles by eliminating the prosecutorial veto.

Sentencing is now set for September 9, 1988, at 1:30 P.M.

IT IS SO ORDERED.

See also, 717 F.Supp. 1417.

---

**6.** We do not wish to falsely raise defendant's or his family's hopes: our willingness to consider evidence of his cooperation in no way implies that we will actually reduce his sentence.