861 F.2d 722
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Effie ADAIR, Defendant-Appellant.
 No. 88-1264.
 United States Court of Appeals, Sixth Circuit.
 Oct. 31, 1988.
 
 Before KENNEDY and KRUPANSKY, Circuit Judges and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Mrs. Effie Adair, appeals her conviction following a jury trial for one count of concealment, two counts of making false statements and one count of conversion in violation, respectively, of 42 U.S.C. Secs. 408(d), 408(c), and 408(e) (1982). All of the counts concern the defendant's reporting, receipt, and use as a representative payee of Social Security surviving child's insurance benefits on behalf of her institutionalized son. Defendant raises three issues on appeal. First, she argues that the indictment for concealment violated her Fifth Amendment right against self-incrimination. Second, defendant maintains that violations for concealment under section 408(d) and conversion under section 408(e) cannot be charged based upon the same set of facts. Lastly, defendant essentially challenges the sufficiency of the evidence to support her conviction for conversion under section 408(e) and making false statements under section 408(c). For the following reasons, we reject defendant's arguments and affirm the convictions on all counts.
 
 
 2
 Defendant is the mother of Thaddeus L. Adair, Jr. Thaddeus was committed to the Kalamazoo Regional Psychiatric Hospital ("Hospital") in July of 1981. On October 6, 1982, after the death of defendant's husband, defendant submitted applications on behalf of Thaddeus for surviving child's insurance benefits. See 42 U.S.C. Sec. 402(d) (1982). The application for benefits stated that the applicant must agree to spend payments for the child's "present needs" and this obligation was explained to defendant by a claims representative and was included in a tear-off sheet provided to defendant on October 6, 1982. In addition to other literature provided to defendant containing instructions regarding the proper use of the funds, defendant was also told by a claims representative on October 6, 1982 "to make sure that the hospital was paid as a first priority in the use of the benefits."
 
 
 3
 As a result of her application for benefits on Thaddeus' behalf, defendant received $16,456.00 as the representative payee for Thaddeus between May 1983 and October 1985. During this time period defendant submitted two representative payee reports certifying her use of all funds received for the present or future needs of Thaddeus. The Hospital billed defendant for Thaddeus' personal needs and hospital expenses. During the first reporting period from March 1, 1983 through February 29, 1984, defendant reported spending $2,860.00 while she actually remitted to the Hospital only approximately $300.00 for personal needs and $2,132.77 for hospital expenses. During the second reporting period from May 1, 1984 through April 30, 1985, defendant reported spending $400.50 while defendant actually remitted to the Hospital only $320.00 for personal needs and nothing for hospital expenses.
 
 
 4
 Because Thaddeus was institutionalized during both reporting periods, defendant was obligated to remit the entire amount received to the Hospital. Despite the Hospital's requests for payment, defendant remitted only $2,941.95 to the Hospital, leaving a difference of $13,514.05. Defendant testified that she used a portion of the benefits to purchase a home which she hoped to convert into a facility capable of housing Thaddeus and providing defendant with a means of livelihood. Other than some relatively minor purchases for Thaddeus, defendant has been unable to account for the balance of the funds received.
 
 
 5
 The case against defendant was tried from January 4 through January 6, 1988. After deliberation the jury returned a verdict of guilty on all four counts contained in the indictment. Defendant was sentenced to one year of imprisonment on each count to be served concurrently. Defendant was also fined $1,000.00 and assessed special assessments totaling $150.00. On March 4, 1988, defendant filed a notice of appeal.
 
 
 6
 Following her conviction, defendant, among other things, made a motion for a reduction of sentence under Federal Rule of Criminal Procedure 35(b). The District Court indicated its willingness to revise the sentence upon completion of a psychiatric evaluation by the Bureau of Prisons pursuant to 18 U.S.C. Sec. 3552(b) (1982). The District Court, however, ultimately denied the motion because it lacked jurisdiction to entertain such a motion pending appeal.
 
 A. Fifth Amendment Violation
 
 7
 Defendant was convicted for concealment of the occurrence of an event affecting her right to payment of Social Security benefits under 42 U.S.C. Sec. 408(d) (Count 1).[1] Defendant contends that section 408(d) violates her Fifth Amendment right against self-incrimination because the section compels defendants to disclose their own crimes.[2] Defendant also objects to the trial court's explanation of the term "event" as used in the statute.
 
 
 8
 In United States v. Alkhafaji, 754 F.2d 641 (6th Cir.1985) this Court identified several factors which the Supreme Court has emphasized in determining whether a statute requiring the self-reporting of information violates the Fifth Amendment guarantee against compulsory self-incrimination. In Alkhafaji the Court observed that the Supreme Court found three factors to be significant in striking down another self-reporting statute:
 
 
 9
 First, the [reporting] requirement was directed at 'a highly selective group inherently suspect of criminal activities,' rather than the public at large. Second, the claim of constitutional protection was 'not asserted in an essentially non-criminal and regulatory area of inquiry'; rather, the inquiry took place in an area 'permeated with criminal statutes, where response to any of the ... questions in context might involve the petitioners in the admission of a crucial element of the crime.' ... Finally, compliance with the requirement would create a substantial likelihood of prosecution.
 
 
 10
 Alkhafaji, 754 F.2d at 643 (citation omitted). See also United States v. Stirling, 571 F.2d 708, 728 (2d Cir.), cert. denied, 439 U.S. 824 (1978) (holding that an "essentially regulatory statute" does not violate the Fifth Amendment when four conditions are met).
 
 
 11
 Section 408(d) simply fails to satisfy any of the above criteria. The targets of disclosure under section 408(d), the representative payees, are not a 'highly selective and inherently suspect' group of people. The activities of most of these people are lawful and proper. Second, section 408(d)'s reporting requirement is primarily regulatory in nature--it is designed to encourage reporting of information necessary for the Social Security Administration ("SSA") to determine a continuing right to benefits. Lastly, although compliance might result in eventual prosecution, the reporting requirement in section 408(d) does not create a 'substantial likelihood' of incrimination. "[T]he possibility that disclosed information might be 'a link in the chain' of evidence leading to prosecution and conviction is not a sufficient basis for finding an infringement." Alkhafaji, 754 F.2d at 645 (citing Stirling ). The disclosure requirement contained in section 408(d) is not unconstitutional.
 
 
 12
 Defendant also challenges the District Court's explanation of the term "event." Section 408(d) uses "event" to refer to any occurrence affecting the right to receive payment. Specifically, defendant objects to the trial court's definition of "event" given in response to a note presented to the court by the jury in the course of the jury's deliberations.[3] Defendant argues that the trial court's written response to the note was inconsistent with the indictment and the initial charge to the jury taken from the indictment thus causing juror confusion and allowing the jury to compromise its verdict. Defendant, however, did not object to the initial charge to the jury or to the court's response to the jury's note.
 
 
 13
 Because defendant failed to state her objections before the trial court as required by Rule 30 of the Federal Rules of Criminal Procedure, we would be justified in refusing to grant relief unless defendant demonstrates plain error or a gross miscarriage of justice. See United States v. Bierley, 521 F.2d 191, 192 (6th Cir.1975). On the facts of this case not only do we find no plain error we find no error whatsoever. The court's response to the jury's note was simply an attempt to define "event" as an "occurrence" or "happening" affecting defendant's right to receive benefits. The court appropriately confined its response to the requirements for proof of the "event" element and provided no opportunity for the jury to compromise its verdict.
 
 
 14
 B. Inconsistency Between Sections 408(d) and (e)
 
 
 15
 Defendant next argues that the government cannot charge defendant with both concealment and conversion. Drawing an analogy to the common law distinction between theft and embezzlement, defendant submits that the charge of concealment under section 408(d) is essentially one for fraud in the acquisition of another's property (theft) while the charge of conversion under section 408(e) is essentially one for fraud in the use of property after proper acquisition (embezzlement) and thus these two counts are mutually inconsistent because one cannot both steal and embezzle the same property. Defendant's argument, while superficially appealing, is misplaced.
 
 
 16
 Prosecution of defendant for both concealment and conversion is not multiplicitous under the test established in Blockburger v. United States, 284 U.S. 299, 304 (1932). The so-called 'Blockburger rule' is that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Id. Section 408(d) requires the government to prove concealment or failure to disclose while section 408(e) requires proof of actual conversion or misuse of the funds received--an affirmative act distinct from the failure to disclose. Thus under Blockburger it was appropriate for the government to charge defendant on separate counts of concealment and conversion because each "requires proof of an additional fact which the other does not." Blockburger, 284 U.S. at 304.
 
 
 17
 Furthermore, we do not think Congress intended to prohibit multiple charging in this instance. We find nothing to suggest that a person cannot be convicted of both concealing information from the SSA and misusing the benefits received on behalf of another. Cf. United States v. Parr, 741 F.2d 878, 880-81 (6th Cir.1984) (upholding two separate convictions against defendant under the Mann Act for the single act of transportation of two women). Counts 1 and 4 charging defendant with concealment and conversion respectively are not multiplicitous.
 
 C. Sufficiency of the Evidence
 
 18
 Defendant presents different arguments with respect to the sufficiency of the evidence supporting each of her convictions under sections 408(e) and (c). In examining a claim that the verdict is not supported by the evidence, we will affirm the jury verdict if a rational jury could have found guilt beyond a reasonable doubt given the evidence viewed in the light most favorable to the government. Glasser v. United States, 315 U.S. 60 (1942). Keeping this in mind we turn to defendant's arguments.[4]
 
 1. Section 408(e)
 
 19
 Defendant argues that she is not guilty of conversion under 408(e) because no unauthorized taking can occur "when there has been a full disclosure [to the SSA] and they have remained silent after having said that [the disclosed use] may be proper." Brief for Appellant at 9. While defendant's theory is within the realm of possibility, the jury's choice to reject it as untenable is supported by substantial evidence.
 
 
 20
 Proof at trial negated the possibility that defendant believed or was led to believe that her use of the benefits for the purchase of a house was proper. The government presented credible testimony that defendant was told that she must give first priority to the provision of Thaddeus' day to day basic needs and that it was her obligation to consult with the SSA prior to making an unusual expenditure. Defendant admitted her knowledge of these requirements. Despite this knowledge defendant remitted only $2,941.95 of the $16,456.00 received on behalf of Thaddeus to the Hospital and was unable to account for the remainder.[5] Furthermore, defendant never consulted with the SSA prior to purchasing the house, nor did the SSA approve such a purchase.
 
 
 21
 In sum, defendant was convicted under section 408(e) of converting funds received to a use other than the use and benefit of Thaddeus. The evidence showed that the Hospital was the sole provider of Thaddeus' needs. Thaddeus received no benefit from the unexplained expenditures of defendant; therefore, the money which defendant refused to pay to the Hospital was misdirected to a use other than to benefit Thaddeus in spite of defendant's knowledge of her obligation to pay the Hospital first. The evidence was sufficient to support the jury's verdict under section 408(e) that defendant "knowingly and willfully" converted the payments. Cf. United States v. Smith, 523 F.2d 771, 774 (5th Cir.1975), cert. denied, 429 U.S. 817 (1976) (defining "knowingly" and "willfully" in the context of 18 U.S.C. Sec. 1001).
 
 2. Section 408(c)
 
 22
 In defendant's last assignment of error she contends that the evidence was insufficient to allow a jury to find a violation of section 408(c). Defendant disputes the government's ability to charge her with making false statements in her representative payee report forms when allegedly she had made truthful oral representations to an SSA service representative. This argument is without merit.
 
 
 23
 The proof at trial contained ample evidence from which a rational jury could find guilt beyond a reasonable doubt. The forms submitted by defendant incorrectly represented that all of the benefits used during the respective reporting period were spent on or held for Thaddeus. Additionally, the specific figures concerning amounts expended and retained were also inaccurate. Because each report was inaccurate and each constitutes a discrete representation, the conviction for two counts of making false statements under section 408(c) was appropriate and supported by substantial evidence. See United States v. Morrison, 43 F.R.D. 516, 518 (N.D.Ill.1967).[6]
 
 
 24
 Defendant's purportedly truthful disclosure to an SSA service representative does not exonerate her for the false representations made in the payee report forms. The first report was dated May 6, 1984--approximately 4 months prior to the defendant's allegedly truthful disclosure to the service representative. Assuming that the representative was informed of the defendant's improper use of the benefits prior to the defendant's submission of the second payee report, such knowledge by the service representative did not constitute authorization for defendant's expenditures nor approval of defendant's later misrepresentation.
 
 
 25
 As a final matter, we recognize the possibility that defendant may "benefit from some form of mental health care." The District Court repeatedly stated its willingness to reevaluate the propriety of the sentence in this case in light of defendant's possible mental health problems. Because the crime at issue here was committed before November 1, 1987, the District Court retains discretion "within 120 days after receipt by the court of [this] mandate issued upon affirmance of the judgment" to reduce the sentence imposed in this case. See Fed.R.Crim.P. 35(b). Cf. United States v. Smith, 839 F.2d 175, 180 (3d Cir.1988) (stating amended Rule 35(b) effective after November 1, 1987). If defendant requests, an immediate mandate will be issued.
 
 
 26
 For the foregoing reasons, the judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 Section 408(d) provides in the pertinent part that:
 [Whoever--] having knowledge of the occurrence of any event affecting ... the initial or continued right to any payment of any other individual in whose behalf he has applied for or is receiving such payment, conceals or fails to disclose such event with an intent fraudulently to secure payment either in a greater amount than is due or when no payment is authorized ... [shall be guilty of a felony]....
 42 U.S.C. Sec. 408(d) (1982).
 
 
 [2]
 Although defendant is technically prohibited from raising these objections on appeal because she failed to present them before the district court, we will address defendant's arguments because they present questions of law and furthermore because the decision whether to hear an issue on appeal is " 'one left primarily to the discretion of the courts of appeals, to be exercised on the facts of [ ] individual cases.' " United States v. Hosford, 782 F.2d 936, 938 n. 1 (11th Cir.), cert. denied, 476 U.S. 1118 (1986) (quoting Singleton v. Wulff, 428 U.S. 106, 121 (1986))
 
 
 [3]
 During its deliberations the jury sent a note to the court inquiring with respect to the concealment count under section 408(d) "[w]hat event are you referring to?" After conferring with counsel for both parties the court drafted the following response:
 In order to establish the first element of the crime charged in Count 1 of the indictment, the government must prove beyond a reasonable doubt that some occurrence or happening took place which affected the defendant's right to receive benefits on behalf of her son, Thaddeus L. Adair, Jr. It is your duty as the finders of fact to determine whether one or more such events occurred and whether the defendant had knowledge of those events. If you find beyond a reasonable doubt that such an event or events occurred, and that the defendant had knowledge of it or them, then you may conclude that the government has established the first element of the crime charged in Count 1 of the indictment. If you find that such an event or events did not occur or that the defendant did not have knowledge of it [or them], then you must find that the government has not established the first element of the crime charged in Count 1 of the indictment.
 
 
 [4]
 Although we will examine defendant's claims without restriction, we note that because defendant made no motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure technically our review is limited to determining whether "manifest injustice" has occurred. See Bierley, 521 F.2d at 192; United States v. Stevens, 817 F.2d 254, 255 n. 1 (4th Cir.1987)
 
 
 [5]
 Even assuming the land purchase to be a permissible expenditure properly included in defendant's accounting, defendant is still unable to account for at least $3,612.06
 
 
 [6]
 We hold that section 408(c) does not include the element of specific intent to make a false representation given the omission of any statutory language regardng intent in 408(c) as compared to 408(d). See Morrison, 43 F.R.D. at 518. But see United States v. Cacioppo, 517 F.2d 22, 23 (8th Cir.1975) (holding specific intent to be an essential element of a violation under section 408(c))