**UNITED STATES**

v.

**Steven VENTO.**

**Crim. No. 84–110.**

United States District Court,
E.D. Pennsylvania.

Nov. 22, 1988.

---

Judy Goldstein Smith, Asst. U.S. Atty., Dept. of Justice, Philadelphia, Pa., for plaintiff.

A. Charles Peruto, Sr., Philadelphia, Pa., for defendant.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

On November 19, 1984, following a jury trial, defendant Steven Vento was found guilty of one count of conspiracy to import, possess and distribute phenyl-2-propanone ("P2P") and to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846 (Count I); one count of possessing with intent to distribute P2P in violation of 21 U.S.C. § 841(a)(1) (Count II); and two counts of distributing P2P in violation of U.S.C. § 841(a)(1) (Counts III and IV). On March 20, 1985, defendant Vento was sentenced by this court to three years imprisonment on Count I and five years imprisonment each on Counts II, III and IV, all sentences to run consecutively. In addition, in connection with Counts II, III and IV, defendant Vento was sentenced to a special parole term of twenty years.

On July 15, 1986, Mr. Vento unsuccessfully attempted to escape from federal prison and subsequently plead guilty before the Honorable Malcolm Muir of the United States District Court for the Middle District of Pennsylvania to one count of attempted escape in violation of 18 U.S.C. § 751(a). Upon the motion of the government unopposed by defendant, Judge Muir deferred defendant's sentencing pending his cooperation with the government. On April 23, 1987, Judge Muir sentenced Mr. Vento to five years imprisonment.

Mr. Vento timely filed, pursuant to Fed. R.Crim.P. 35, a motion for reduction of sentence. Upon request of the government, joined in by defendant, this court continued consideration of defendant's Rule 35 motion until after the completion of Mr. Vento's anticipated testimony at the trial in *United States v. Scarfo*, Cr. No. 87–258 (E.D.Pa.). An evidentiary hearing on defendant's motion was held on October 3, 1988. For the reasons stated below, this court will grant defendant's motion and reduce his sentence to time served as of July 15, 1986.

It is well established that the granting or denial of a Rule 35(b) motion for reduction of sentence is addressed to the sound dis-

cretion of the district court. *Diggs v. United States,* 740 F.2d 239, 249 (3d Cir.1984); *United States v. Mariano,* 646 F.2d 856, 858 (3d Cir.1981), *cert. denied,* 454 U.S. 856, 102 S.Ct. 304, 70 L.Ed.2d 150 (1981). As is the case when a defendant is originally sentenced, a meaningful determination of a Rule 35(b) motion involves an "inquiry broad in scope, largely unlimited either as to the kind of information [the sentencing judge] may consider, or the source from which it may come." *United States v. Grayson,* 438 U.S. 41, 50, 98 S.Ct. 2610, 2615–16, 57 L.Ed.2d 582 (1978). The sentencing judge may, of course, consider factual information developed subsequent to sentencing. *See* ABA Standards for Criminal Justice, 2d ed. 1980, pp. 18–501—18–502.

Among the factors properly considered by a court in determining a Rule 35(b) motion is the degree to which defendant has cooperated with the government in further criminal investigations and prosecutions. Indeed, as the Third Circuit has stated, in *United States v. Garcia:*

> [A] court may properly invoke its power to grant lenity to those who, having admitted transgressions against the sovereign, thereafter assist the sovereign in improving social order and the public welfare.

544 F.2d 681, 682 (3d Cir.1976); *see also United States v. Mariano,* 646 F.2d 856, 858–59 (3d Cir.1981); *United States v. Bethany,* 489 F.2d 91, 93 (5th Cir.1974); *United States v. Dawson,* 642 F.2d 1060, 1062 (7th Cir.1981); *United States v. Unterman,* 433 F.Supp. 647, 648 (S.D.N.Y.1977).

This court notes that the government not only supported defendant Vento's motion for reduction of sentence but also presented testimony from law enforcement officials concerning the scope and significance of Mr. Vento's cooperation with ongoing criminal investigations. Specifically, Mr. Martin Pracht, Special Agent for the Drug Enforcement Administration stated, in pertinent part:

> I first became associated with Mr. Vento in the summer of 1986 when he began to cooperate with members of the Drug Enforcement Administration, the FBI and the other agencies. He provided intelligence and information to us involving several investigations and was basically the first, what I consider important witness to help us in an investigation into the La Cosa Nostra's control over the importation of P2P from Europe into the United States and distributions to local dealers here in the Philadelphia area.... Mr. Vento helped us by identifying people that he himself had worked with or had knowledge of working with, involving drug networks here in the Philadelphia area. He was also willing and did make introductions of undercover agents to various people in Philadelphia and elsewhere and also wrote letters of introduction on behalf of undercover agents to help us, assist us in ongoing operations.

Hearing (10/3/88), pp. 3–4. Agent Pracht further testified that Mr. Vento's cooperation led to the seizure of over 1,000 kilograms of P2P, 20 kilograms of meth. cocaine, over $5 million in financial assets, the arrest of over seventy people, and the removal from the streets of an organization responsible for the distribution in the Philadelphia area of over 2,000 pounds of methamphetamine. *Id.* at 5–6.

Further evidence of the significance of Mr. Vento's cooperation was provided by Mr. Gary W. Langan, Special Agent with the Federal Bureau of Investigation:

> I would consider him to be the spoke in the wheel so to speak—if the spoke wasn't there, the wheel would not have turned. His cooperation was essential, without it there would not be a case.

*Id.* at 14. Indeed, Mr. Langan testified that in his nineteen years as an FBI Agent, he had never seen a more valuable or a more cooperative witness than Mr. Vento. *Id.* at 25. Finally, Mr. Barry Gross, an attorney with the Philadelphia Strike Force, stated that as a result of Mr. Vento's "100% truthful and active cooperation", the government uncovered major P2P operations in Belgium and Germany. *Id.* at 26–27.

Beyond the aforementioned immediate assistance to ongoing criminal investigations, Mr. Vento's cooperation encouraged other individuals to provide assistance to the government. Agent Pracht of the DEA testified that Mr. Vento's cooperation was particularly useful in securing assistance from others given both the nature of the organized crime and the reluctance of many in Philadelphia to cooperate:

> Especially when you deal with an organization like La Cosa Nostra, its tendencies toward violence, it is very hard to get people to break the code of silence or to come forward to provide assistance. And as a result of Mr. Vento's assistance, we were able to use that to help get other individuals to decide to cooperate with the government ... It is very hard, especially in the Philadelphia area, where avenues are so tight, communications so small, sometimes we think it is necessary to come out and speak out for people that cooperate.

*Id.* at 7, 10. Indeed, Agent Langan of the FBI testified that denial of Mr. Vento's Rule 35(b) motion would discourage others from cooperating by sending to the community the message that neither the courts nor the government values or rewards such efforts. *Id.* at 21–22.

This court is also aware that Mr. Vento has suffered a number of hardships because of his cooperation with the government. First, defendant Vento, as a result of his cooperation, has been placed in the federal witness protection program. As a result of his placement in the witness protection program, Mr. Vento not only loses many of the privileges that a regular prisoner enjoys (such as recreational time and vocational opportunities) but also does not qualify for credit for good time. *Id.* at 15, 17–18. Second, as a result of his cooperation, both Mr. Vento and his wife have received numerous threats against their lives. *Id.* at 14, 17. Third, Mr. Vento's cooperation had led to his being completely ostracized by his family. Agent Langan testified that:

> Mr. Vento's own family has basically disowned him as far as I am concerned. That is not because he was involved in criminal activities, [but] because he decided that maybe he wanted to get a new lease on life and cooperate with the government. And his mother won't even speak to him ... [Mr. Vento's wife] was receiving help from his family and after he cooperated, she was receiving nothing.

*Id.* at 17–18. Fourth, because Mr. Vento's sentencing on the attempted escape charge was deferred pending his cooperation, his projected release date on Judge Muir's sentence is nine months later than it would have been absent Mr. Vento's cooperation. *Id.* at 29–30. Despite these hardships, however, Mr. Vento continues to fully cooperate with ongoing government investigations. *Id.* at 19–20.

For the reasons stated, this court will grant defendant's motion and reduce his sentence on Counts I through IV of Indictment Number 84–110 to time served as of July 15, 1986, with the understanding that the special parole term of twenty years imposed by this court remains in full force and effect.