**UNITED STATES of America**

v.

**James J. FREDERICKS, Defendant.**

**Crim. A. No. 90–134 (SSB).**

United States District Court,
D. New Jersey.

March 9, 1992.

Michael Chertoff, U.S. Atty. by Alain Liebman and Paul Fishman, Asst. U.S. Attys., Newark, N.J., for U.S.

John J. Barry, Clapp & Eisenberg, Newark, N.J., for defendant Fredericks.

## OPINION

BROTMAN, District Judge.

Presently before the court is Government's motion for reduction of the sentence of defendant James J. Fredericks pursuant to Rule 35(b) for his "substantial assistance to law enforcement authorities subsequent to his sentencing." For the reasons set forth below this motion is denied.

## I. *BACKGROUND*

Beginning in about 1981 James J. Fredericks developed a scheme to solicit money from investors who believed they were investing money in Montgomery National Bank repurchase, or repo agreements. Repo agreements represent money loaned to the bank from its customers; they are a common investment vehicle offering a higher rate of interest than that allowed on the more tightly regulated certificates of deposit. Fredericks was the Senior Vice-President, Executive Vice President, Cashier, and Corporate Secretary of Montgomery National Bank. Fredericks' co-conspirator, Michael Schneiderman, the Assistant Vice-President of Montgomery, would solicit the money for the fraudulent repo agreements in return for a commission.

The investors were provided with legitimate looking repo letters on bank stationary most of which were signed by Fredericks as an officer of Montgomery National Bank. Unlike legitimate bank repos, the fraudulent repos were unsupported by securities set aside at Montgomery and no deposit of monies was made with the bank. Instead, Fredericks invested the money in stocks and ventures such as race horses, billiards statistics compilations, and equipment leasing. The ventures failed, the losses grew and ultimately the bank faced liabilities in excess of $10 million. The bank failed as a direct result of the scheme, causing further losses to repo holders, shareholders, and the FDIC which liquidated the Bank's assets.

In August of 1989, Fredericks went to the United States Attorney's Office and related the entire scheme. Thereafter, Fredericks continued to explain the scheme to law enforcement personnel and assisted in identifying the defrauded investors.

Then, on March 29, 1990, Fredericks entered a plea of guilty to a two count Infor-

mation. Counts One and Two of the Information charged that from as early as August, 1983, to as late as August 1989, defendant Fredericks did knowingly and wilfully conspire with others to defraud Montgomery National Bank in Rocky Hill, and did knowingly and willfully commit mail fraud.

On May 24, 1991, after a thorough and lengthy review of the presentencing report, the sentencing briefs and letters received from victims of the crimes, this court sentenced Fredericks to a term of imprisonment of fifty-four (54) months.[1] From that sentence, Fredericks filed a notice of appeal on June 10, 1991.

Subsequent to sentencing, at the request of the F.B.I., Fredericks spoke at three seminars. On June 17, 1991 Fredericks addressed a group of certified public accountants; on June 26, 1991, Fredericks spoke to a group of F.B.I. agents, regulators and federal prosecutors at a bank failure seminar. Fredericks also spoke at a white collar crime conference held on June 27, 1991. At each of these seminars, Fredericks explained how the repo scheme at Montgomery National Bank developed and operated.

On October 30, 1991, while the appeal was still pending, the government moved for a reduction of Fredericks fifty-four month sentence pursuant to rule 35(b) for "substantial assistance" to law enforcement authorities subsequent to his sentencing. Because the appeal was still pending, the court felt that it was without jurisdiction to entertain the motion to reduce sentence. *See United States v. Batka,* 916 F.2d 118, 120 (3d Cir.1990); *see also United States v. Davis,* 924 F.2d 501, 504 (3d Cir. 1991) (once appeal is filed, district court may not exercise jurisdiction under Rule 35); *Government of the Virgin Islands v. Leonard,* 922 F.2d 1141, 1146 (3d Cir.1991) (district court did not abuse its discretion in denying reduction of sentence where court

had no jurisdiction to consider motion as appeal was pending).

On December 31, 1991, before the hearing on the government's motion, however, Fredericks consented to the withdrawal of his appeal. Because of the withdrawal of this appeal, the court now has jurisdiction to entertain the motion to reduce sentence based on Fredericks' post sentence cooperation. Therefore, the only issue before this court is whether Fredericks' speaking at these three seminars provided "substantial assistance" as required by Rule 35(b) and whether his actions will justify any reduction of sentence.

## II. *DISCUSSION*

■ Rule 35(b) of the Federal Rules of Criminal Procedure[2] provides, in relevant part:

> The court, on motion of the Government made within one year after the imposition of sentence, may reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense ...

Motions for reduction are "addressed entirely to the discretion of the district judge." *Diggs v. United States,* 740 F.2d 239, 249 (3d Cir.1984); *see also United States v. Smith,* 839 F.2d 175, 181 (3d Cir.1988). The court is not divested of its broad discretion when considering motions to reduce because the motion is made by the Government. *United States v. Hamrick,* 741 F.Supp. 103, 107 (W.D.N.C.1990); *see also United States v. Smith,* 839 F.2d 175, 180–81 (3d Cir.1988) (court upheld denial of reduction even though government joined in motion). The Third Circuit has stated that "the judge can deny such motions for virtually any reason or for no reason at all." *Diggs,* 740 F.2d at 249.

■ In ruling on a Rule 35(b) motion the court may make a broad inquiry, "largely unlimited either as to kind of information

---

1. At the same time, Frederick's co-conspirator, Michael Schneiderman, was sentenced to a term of seventy-eight (78) months.

2. Since the offense took place, in whole or in part after November 1, 1987, Rule 35 quoted above, as amended in the Comprehensive Crime Control Act of 1984, is applicable. *See United States v. Smith,* 839 F.2d 175, 180 (3d Cir.1988).

[the sentencing judge] may consider, or the source from which it may come.'" *United States v. Vento,* 700 F.Supp. 823, 824 (E.D.Pa.1988) (quoting *United States v. Grayson,* 438 U.S. 41, 50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978)).

## A. SUBSEQUENT SUBSTANTIAL ASSISTANCE

 The Government, in its brief, argues that Fredericks' sentence should be reduced pursuant to Rule 35(b) because of Fredericks' "substantial assistance provided prior to his sentencing and that provided following his sentencing." (Brief at 4). This court, however, fully considered Fredericks' presentence cooperation at the original sentencing:

> This court always credits cooperation, and will give a certain credit to that cooperation. Not to the extent that the U.S. Government has apparently requested.... in this particular case, I am concerned with punishment, deterrence, and I'm concerned with protection of society.... Here we have a situation where there is public outrage. It is a situation that is necessary to restore public confidence, a situation where we have an extraordinary number of victims, hundreds, and a situation where the duration of the scheme extended over a long, long period of time.... Now to Mr. Fredericks' credit he has really unloaded himself in the courtroom. He has taken all the blame; no way walked away from that, and credit is going to be given for that. Given in the guidelines.

(Sentencing Transcript at 53–56). Therefore, the only real issue is whether Fredericks' post-sentence speaking at three seminars is "substantial assistance" as required by Rule 35(b) to reduce the sentence already imposed. *See United States v. Hill,* 611 F.Supp. 854, 856 (D.C.R.I.1985) (defendant was not entitled to a reduction of sentence on the grounds of cooperation in investigation of a complicated scheme to defraud banks since the defendant's cooperation was taken into account at the time of the original sentencing); *see also United States v. DiSalvo,* 738 F.Supp. 920, 922 (E.D.Pa.1990) (court denied defendant's motion for reduction because cooperation already considered at sentencing).

Moreover, by its plain language, a motion to reduce pursuant to the amended Rule 35(b) requires *"subsequent* substantial assistance in the investigation or prosecution of another who has committed an offense." (emphasis added); *see also United States v. Howard,* 902 F.2d 894, 897 (11th Cir.1990) (amended Rule 35 limits court's authority to reduce sentences to correction of illegal sentences and reduction for subsequent substantial assistance). Thus the only issue is whether Fredericks' post-sentence assistance of speaking at three seminars constitutes substantial assistance as required by Rule 35(b) to reduce the sentence already imposed.

### 1. The Degree of Assistance

This court cannot accept that Fredericks' speaking at three seminars constitutes subsequent substantial assistance in the investigation or prosecution of another who has committed an offense. *See United States v. Vento,* 700 F.Supp. 823 (E.D.Pa.1988). In *Vento,* the court held that the defendant had cooperated significantly with the Government in further criminal investigations and prosecutions so as to justify a reduction in his sentence pursuant to Rule 35(b) where the defendant provided information involving several investigations into La Cosa Nostra's control over the importation of P2P from Europe, identified and made introductions of under cover agents to people having drug connections, and the defendant's cooperation led to the seizure of over 1,000 Kilograms of P2P, 20 Kilograms of Meth. cocaine, over $5 million in assets, and the arrest of seventy people. *Vento,* 700 F.Supp. at 824.

In determining whether the defendant's cooperation was sufficient to warrant a reduction, the court further noted that a reduction of sentence was appropriate in light of the difficulty in getting people to provide assistance when dealing with La Cosa Nostra, the necessity of the defendant being placed in the federal witness protection program, the numerous threats against the defendant and his wife's lives,

the defendant's continued full cooperation and the defendant's being completely ostracized by his family because of this cooperation. *Id.* at 825.

Although the court recognizes that assistance of this magnitude is not required in every case, *Vento* sheds light on the factors considered in determining whether assistance was substantial and whether it benefitted in the investigation or prosecution of others. Unlike the defendant in *Vento*, Fredericks' speaking at three seminars placed him in no danger of physical safety, did not involve a substantial or continuing commitment, nor did it lead to him being ostracized by his family. Nor did Fredericks' speaking at these seminars lead to any specific prosecutions or investigations of others.

Moreover, it appears that because of Frederick's previous cooperation, the government already possessed intricate details of how the scheme operated and was concealed. Thus Fredericks' speaking at the seminars, repeating the details of the scheme, added little to the information that the government already possessed.

### 2. Balancing Cooperation with Other Factors

If one balances the extent of Fredericks' cooperation with other factors such as the enormity of the crime, the breach of fiduciary duty, the substantial monetary loss, the repetitious nature of the acts, and the court's interest in deterrence, the case law clearly supports a denial of the motion to reduce sentence.

In *United States v. Smith*, 839 F.2d 175, 180–181 (3d Cir.1988), the Third Circuit upheld the trial court's denial of a motion to reduce sentence based on post-conviction cooperation. In *Smith*, the defendant's conviction arose out of a scheme in which the defendant and his co-conspirators, in return for generous remuneration, agreed to make political contributions to state officials in order to obtain lucrative contracts. Subsequent to his conviction, the defendant's testimony at the trials of the two other defendants lead to their convictions. *Id.* at 177. The Third Circuit, in upholding the denial of the motion, reasoned that the

district court engaged in an implicit balancing recognizing that the crimes were substantial and violative of the public trust and that the district court decided to give more weight to the concept of deterrence than encouraging those who engage in such conduct to cooperate with the Government. *Id.* at 181.

Other courts have similarly denied reduction of sentence based on cooperation. In *Hill*, for example, the court, in denying a motion to reduce sentence of a defendant who was convicted of a scheme to defraud banks, noted the enormity of the crime, the blatant and repetitious nature of the acts, the defendant's egregious breach of fiduciary duty, and the substantial monetary loss occasioned in consequence of Hill's conduct. *Hill*, 611 F.Supp. at 856; *see also United States v. Massa*, 804 F.2d 1020, 1025–26 (8th Cir.1986) (twenty year prison sentence for defendant convicted of offenses arising our of massive swindle of brokerage firm was not so excessive as to require reduction given $16 million amount involved in fraud, $2.5 million profit realized by defendant and fact that numerous small investors lost their life's savings).

Applying such a balancing test as the Third Circuit did in *Smith*, the motion to reduce Fredericks' sentence must be denied. Frederick's scheme caused the bank to fail, causing further losses to repo holders, shareholders, and the FDIC which liquidated the Bank's assets. There were losses of over ten million dollars. If you consider the Montgomery National Bank, its stockholders, individual investors, and the F.D.I.C., there are a total of 486 victims. Some of these victims lost their entire life's savings and a large percentage of the loss appears unrecoverable.

Not only was the enormity of Fredericks' crime significant, but that crime constituted an egregious breach of fiduciary duty and public trust. For over eight years, Fredericks abused his position of trust as a bank officer by selling fraudulent repo agreements to Montgomery National Bank customers. Fredericks' unlawful actions contributed directly to the loss of confidence of an important institution.

The Government argues that the motion should be granted to promote future cooperation and the resultant discovery of other bank frauds. Like the court in *Smith*, this court gives more weight to the concept of deterrence than encouraging those who engage in such conduct to cooperate with the Government. *See Smith*, 839 F.2d at 181. Any deterrence purposes of sentencing would be nullified if a man involved in fraudulent activity for over eight years creating losses over ten million dollars could get a sentence of less than four and one-half years.

Thus this court holds that the minimal extent of Fredericks' cooperation of speaking at three seminars when viewed in light of the enormity of his crime, the breach of fiduciary duty, the repetitious nature of his acts and this court's interest in deterrence, cannot in any measure be considered subsequent substantial cooperation so as to justify a reduction of sentence pursuant to Rule 35(b). Fredericks' motion for a reduction of sentence is denied.