**UNITED STATES of America**

v.

**Robert S. BACHELER**

and

**Rocco Cipparone, Appellants.**

**Nos. 79–1402, 79–1403.**

United States Court of Appeals, Third Circuit.

Argued Sept. 5, 1979.

Decided Nov. 8, 1979.

As Amended Nov. 26, 1979.

Nicholas J. Nastasi (argued), Philadelphia, Pa., for appellant.

Louis J. Ruch (argued), Asst. U.S. Atty., Philadephia, Pa., for appellee.

Before SEITZ, Chief Judge, and GIBBONS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellants Bacheler and Cipparone were convicted of two counts (counts 1 and 2) of violating the Racketeering and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and (d)[1], by engaging in a pat-

---

1. 18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of

tern of racketeering activity (bribery) and conspiracy to so engage while they were employees of Philadelphia Traffic Court. Bacheler also was convicted of two counts (counts 3 and 4) of filing false tax returns for the years 1975 and 1976 in violation of 26 U.S.C. § 7206(1).[2]

Both appellants claim that they were deprived of a fair trial when the court refused to confer judicial immunity upon a defense witness, that they were severely sentenced as punishment for their failure to cooperate with the government, and that the Philadelphia Traffic Court is not an "enterprise" within the meaning of the RICO statute. In addition, appellant Cipparone claims that the evidence was insufficient to sustain his conviction. Bacheler contends that his conviction on counts 3 and 4 should be reversed on the ground that the disclosure and use of his 1975 and 1976 tax returns violated the relevant provisions of the Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1667. It is this latter contention that will be addressed first.

Bacheler's statutory argument relies in part on the purpose behind the 1976 Tax Reform Act to protect an individual's privacy in tax returns and return information. In connection with that claim it may be useful to discuss briefly the history of the provisions of that statute dealing with disclosure and confidentiality.

Before the enactment of the Tax Reform Act of 1976, the then existing section 6103 made tax returns a matter of "public record" but authorized inspection only upon order of the President and under regulations based upon his Executive orders; authorized disclosure of income tax returns to state and local tax authorities upon request of the governor for purposes of state or local tax administration; authorized inspection of returns or return information by the tax writing committees of Congress, by any select committee if authorized by resolution of the appropriate body, and by standing and select committees when authorized by the President and approved by the full committee; and, under a 1974 Amendment, Pub.L. No. 93–406, 88 Stat. 941 (1974), authorized disclosure to various federal departments and agencies for purposes of administering the Employee Retirement Income Security Act. 26 U.S.C. §§ 6103(a), (b), (d) and (g) (1970) (amended 1976); Reg. § 301.6103(a)–101. The pre-amendment section 6103(f) also required the IRS to furnish any inquirer information as to whether a person has or has not filed an income tax return. See *United States v. Liebert*, 519 F.2d 542 (3d Cir.), *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 301 (1975).

Executive orders issued pursuant to section 6103(a) authorized the IRS to make raw tax data available to a variety of federal departments and agencies on the representation that such data was needed for statistical or federal law enforcement purposes. *See, e. g.*, Exec. Order No. 11697, 38 Fed.Reg. 1723 (1973). Information submitted to Congress indicated the extent of disclosure that had been taking place. In calendar year 1975, nearly 30,000 tax returns were furnished to 18 federal departments and agencies, mostly to the Justice Department, for law enforcement purposes

---

such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(d) provides:

It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

18 U.S.C. § 1961(1)(A) defines "racketeering activity" to mean, in pertinent part, any act involving bribery which is chargeable under state law and punishable by imprisonment for more than one year. The underlying state bribery offense referred to in the indictment is a violation of 18 Pa.Cons.Stat.Ann. §§ 4701(a)(1) and (3) (Purdon) (Bribery in Official and Political Matters).

**2.** 26 U.S.C. § 7206(1) reads as follows:

Any person who . . . [w]illfully makes and subscribes any return statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony.

unrelated to tax administration; 66,000,000 magnetic tape records of selected data from individual tax returns were furnished to 39 States plus the District of Columbia and Puerto Rico; and selected data on tape from approximately 138,000,000 tax returns was furnished to the Census Bureau. *Confidentiality of Tax Return Information: Hearing Before the House Committee on Ways and Means,* 94th Cong., 1st Sess. 15 (1976) (hereinafter *Hearing*) (statement of Donald C. Alexander, then Commissioner of the Internal Revenue Service).

The Chairman of the Oversight Subcommittee of the House Ways and Means Committee stated "there is cause for alarm that tax returns are not being accorded the protection and care that taxpayers expect or that common sense warrants." *Id.* at 4. In addition to concern about the extent of disclosure and the failure to adopt procedures designed to prevent unauthorized inspection, there was concern expressed that income tax information was being used extensively in federal courts just to attack the credibility of witnesses on unrelated facts, *id.* at 63, or was being used for political purposes in connection with "enemies lists and groups targeted for harassment through the Internal Revenue Service . . . ." *Id.* at 90.

As a result provisions relating to confidentiality and disclosure of tax returns and information were included as part of a comprehensive substantive revision of the tax laws in the Tax Reform Act of 1976. The amendment to section 6103 represents a legislative attempt to balance the basic rights of taxpayers to privacy with respect to their tax affairs and the legitimate need of federal and state agencies for access to tax information for a purpose useful, often essential, in carrying out their government function. S.Rep. 938, 94th Cong., 2nd Sess. 318 (Pt. I), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 3439, 3747.

Under the revised section 6103, the general rule has been established that returns and return information are to be confidential and not subject to disclosure except as authorized by statute (§ 6103(a)). The prior

practices have been circumscribed by provisions such as those requiring that disclosure to the President can be made only upon written request personally signed by him which specifies the reason for the inquiry (§ 6103(g)); that disclosure to Congressional committees is generally limited to those with responsibility in the tax area under safeguards to protect the identity of the taxpayer and can be made to other committees only upon congressional resolution which specifies the purposes of the inspection and the unavailability of alternative sources for such information (§ 6103(f)); that the Census Bureau can use tax returns and return information for research and statistical purpose but that the Bureau of Economic Analysis and the Federal Trade Commission may receive only corporate tax information (§ 6103(j)); and that limited disclosure is permitted to the Social Security Administration, Railroad Retirement Board, Department of Labor, etc. only when the tax information is directly related to programs administered by the requesting agency (§ 6103(*l*)). Tax information will be available only to state tax officials for use in administering the state's tax laws (§ 6103(d)); the only provision authorizing disclosure to local governments is in connection with child support obligations (§ 6103(*l*)(6)). The statute now contains explicit provision for safeguards including review and reporting and the maintenance of appropriate records by the IRS (§ 6103(p)). Unauthorized disclosure of tax information has now been made a felony (§ 7213).

Some of the practices most disquieting to those who urged reform involved the transmission of information between the Internal Revenue Service and the Justice Department, including United States attorneys. Sections 6103(h) and 6103(i) of the revised statute were designed to cover those situations.

Under section 6103(i) covering disclosure requested by federal officers or employees for administration of federal laws "not relating to tax administration", disclosure can only be made following an order by a feder-

al district court judge who must find that there is reasonable cause to believe, based upon information believed to be reliable, that a specific criminal act has been committed; that there is reason to believe that such return or return information is probative evidence of a matter in issue related to the commission of such criminal act; and that the information sought to be disclosed cannot reasonably be obtained from any other source, with certain exceptions. 26 U.S.C. § 6103(i)(*1*)(B).

On the other hand, when a matter deals with "tax administration", there are two possible routes under which disclosure of tax returns and return information can be made. Under one route, that covered by 26 U.S.C. § 6103(h)(3)(A), the statute provides:

(A) [I]f the Secretary has referred the case to the Department of Justice, or if the proceeding is authorized by subchapter B of chapter 76, the Secretary may make such disclosure on his own motion.[3]

Under the second route, that covered by 26 U.S.C. § 6103(h)(3)(B), the statute provides:

(B) [I]f the Secretary receives a written request from the Attorney General, the Deputy Attorney General, or an Assistant Attorney General for a return of, or return information relating to, a person named in such request and setting forth the need for the disclosure, the Secretary shall disclose return or return the information so requested.

It is conceded that this case was one relating to "tax administration" and hence section 6103(h) is applicable. It is further conceded by the government that the procedure under section 6103(h)(3)(B) was not followed in this case. Therefore, disclosure was authorized only if this was a case in which the Secretary "referred the case to the Department of Justice" under section 6103(h)(3)(A).

Bacheler argues that this was not a case in which the Secretary "referred" nor were the actors the appropriate delegates of the "Secretary". We must be ever mindful that when Congress enacts a statute de-signed to limit government intrusion in the private affairs of its citizens, the statutory provisions must be followed scrupulously. *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). To decide whether this was a "referral" situation it is necessary to review the chain of events leading to the disclosure of Bacheler's tax returns to the Department of Justice.

(1) On April 20, 1978, Alan Lieberman, an Assistant United States Attorney for the Eastern District of Pennsylvania, wrote to Stanley Krysa, Chief of the Criminal Section of the Tax Division, Department of Justice, stating that Bacheler and others were under investigation for bribery. The letter contained the following request:

In light of the above, we believe that there are significant tax violations that have been committed in connection with the activities of various personnel of the Philadelphia Traffic Court, and that an Internal Revenue Service investigation could be of great assistance to the investigation presently being conducted by the FBI. To facilitate a joint investigation and to allow this office to pursue violations of the criminal tax laws, it is requested that you seek, on behalf of this office, the assistance of the Internal Revenue Service in an open ended grand jury investigation of the above named individuals, the Philadelphia Traffic Court, its writ servers, and other persons involved in the activities described above.

(2) On May 2, 1978, Krysa wrote to Stuart E. Seigel, Chief Counsel of the Internal Revenue Service;

In connection with our determination as to whether or not a grand jury investigation of potential criminal tax violations should be authorized, we would appreciate your expert advice in connection with the information developed by the U.S. Attorney, as well as your advice as to whether or not you will be able to furnish us with the advice and assistance of the Service if this office authorizes a grand

---

**3.** The provisions of subchapter B of chapter 76, not at issue here, deal with judicial proceedings involving tax collection brought by taxpayers and third parties.

jury investigation of potential criminal tax violations.

(3) On May 10, 1978, David E. Gaston, Director of Internal Revenue Service's Criminal Tax Division, by memorandum actually signed by Harold Z. Cook for Gaston, forwarded the request to the Director of the Internal Revenue Service's Intelligence Division. This memorandum stated, in part:

This is being forwarded to you for consideration by the Service in view of the request for advice as to whether Service personnel would be available to assist the attorney for the government in the event a grand jury investigation of Title 26 and Title 26-related offenses is authorized. Please note that this Tax Division request does not meet the provisions of I.R.C. § 6103(h)(3)(B) inasmuch as it is signed by the Chief, Criminal Section, and not by the Assistant Attorney General, Tax Division.

*This office has no objection in principle to a Service referral of this matter for grand jury investigation and commitment of personnel should the Service's evaluation determine that such a referral and commitment is appropriate.* As this request appears to relate to a matter falling principally within one region, we consider the proper referral procedure to be from the Regional Commissioner, Mid-Atlantic Region, to the Regional Counsel, Mid-Atlantic Region, for Regional Counsel consideration in the event the Regional Commissioner recommends grand jury investigation. (emphasis added).

(4) The matter then proceeded from the Director of the IRS Intelligence Division to the IRS Regional Commissioner of the Mid-Atlantic Region; from the Regional Commissioner, Mid-Atlantic Region to the District Director, Philadelphia; from the District Director, Philadelphia District to the Regional Commissioner, Mid-Atlantic Region "request[ing] permission for a Title 26 Grand Jury . . . "; from the Regional Commissioner, Mid-Atlantic Region to the Regional Counsel, concurring in the "district's request" and recommending approval, and then eventually back to the Director, Criminal Tax Division from the Assistant Regional Counsel, Criminal Tax, Philadelphia, Pa.

(5) Thereafter, on May 30, 1978, the key document in this case was sent under the signature of Robert L. Liken, Regional Counsel of Internal Revenue Service, but actually signed by Assistant Regional Counsel, Richard Francis, to M. Carr Ferguson, Assistant Attorney General, Tax Division, Department of Justice, Washington, D. C., stating "We recommend that a Grand Jury investigation be conducted to develop evidence of criminal violations of the Internal Revenue Code arising from bribes and kickbacks allegedly paid to . . . Robert S. Bacheler. . . ." The letter continued:

*The referral of this matter is duly authorized,* and the assistance of the Internal Revenue Service personnel will be furnished upon request of the attorneys for the Government . . . Please advise us of the action taken by your office in this matter. (emphasis added).

(6) Bacheler's tax information was then supplied to the Department of Justice.

█ It is apparent from the foregoing that this was a "referral" from the Secretary to the Department of Justice. Since both the fact and the time of referral determine various consequences in tax investigation and prosecution, see *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the Secretary has developed internal procedures in connection with referrals which were followed in this case. We do not think the characterization of the May 30, 1978 letter as a "referral" letter changes because the investigation originated with the Department of Justice rather than with the Secretary. "It is a quite natural development for the resources of several federal agencies to combine in the task of investigating organized crime and its venture into legitimate business." *United States v. Chemical Bank,* 593 F.2d 451, 454 (2d Cir. 1979).

Bacheler's other claim is that the chain of delegation of the power to refer did not descend to an Assistant Regional Counsel.

The evidence presented showed the following: By order dated July 26, 1961, and reaffirmed on March 16, 1978, the Secretary of the Treasury authorized, *inter alia*, the General Counsel to perform any functions the Secretary is entitled to perform. Treasury Department Order No. 190 and No. 190 (Revision 15). 43 Fed.Reg. 11884–85 (March 22, 1978). The General Counsel, in 1964, had delegated to the Chief Counsel, IRS, the authority to determine which income tax cases should be referred to the Department of Justice. General Counsel Order No. 34. (Appendix at 186a–190a). The Chief Counsel, IRS, delegated the authority to refer to Regional Counsel, Philadelphia. 1030.1A CHG 15, April 7, 1977. (Appendix at 241a). Finally, Regional Counsel, Philadelphia, delegated the referral authority to Assistant Regional Counsel Richard Francis. Order of April 28, 1975. (Appendix at 256a).

■ The statute expressly provides that "Secretary" means the Treasury Secretary or his delegate (§ 7701(a)(11)(B)) and defines delegate to include any Treasury Department employee "duly authorized by the Secretary of the Treasury directly, or indirectly, by one or more redelegations of authority . . . " (§ 7701(a)(12)(A)(i)). The statute in no way restricts the number of redelegations nor provides that all of such delegations must have taken place or have been reaffirmed following the enactment of its provisions.

■ Bacheler's reliance on the footnote in *United States v. Mangan*, 575 F.2d 32, 38, n.5 (2d Cir.), *cert. denied*, 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978), is misplaced. In that case the court referred to a line of delegation under section 6103(h) which is found in the Commissioner's Delegation Order No. 156, paragraph 2, 1976 CCH Federal Tax Rep. ¶ 6666, listing those persons to whom the Commissioner of Internal Revenue delegated authority. Bacheler points to the absence of an Assistant

Regional Counsel as one of those designated persons. However, the authority delegated by the Commissioner is not relevant here for purposes of referral. Even were the Commissioner someone authorized by the Secretary to make referrals under subsection (h)(3), a fact which we need not decide here [4], this would not preclude existence of another line of delegation directly from the Secretary through the various Counsel. We find that the government established the appropriate chain of delegation from the Secretary to the Assistant Regional Counsel to make the delegation involved in this case.

Despite the concern previously discussed with respect to disclosure of tax return and return information, it was uniformly recognized that in tax cases the Department of Justice must have access to tax returns and return information, at least concerning those persons who are the immediate object of a tax enforcement action. In such cases the Department of Justice acts as the attorney for the Internal Revenue Service. Hearings, *supra* at 45–46. The Senate Committee which drafted the provision later encompassed in Section 6103 recognized the need of the Justice Department for continued access to tax returns and return information in carrying out its statutory responsibility in the civil and criminal tax areas and did not seek to change the rules pertaining to the disclosure of returns and return information of the taxpayer whose civil and criminal tax liability is at issue. S.Rep.No. 94–938, at 324–325. For the above reasons, we reject Bacheler's contention that his tax returns were improperly disclosed.

■■ We have carefully considered the other contentions raised by appellants and affirm the action of the trial court as to each. Appellants claim that their right to a fair trial was violated because the trial court refused to immunize a prospective defense witness. This court has held that a trial court has no statutory authority to

---

**4.** It is likely that paragraph 2 of the Commissioner's Delegation Order No. 156 establishes only the line of delegated authority to those IRS officials who may actually furnish the needed tax return to the Department of Justice in cases which the Secretary has referred to that Department, and does not apply in any way to authority to make the referral.

immunize a defense witness. *United States v. Rocco,* 587 F.2d 144, 147 (3d Cir.), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979); *United States v. Niederberger,* 580 F.2d 63, 67 (3d Cir.), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978). This case does not present prosecutorial threats or intimidation of the prospective witness such as was present in *United States v. Morrison,* 535 F.2d 223 (3d Cir. 1976), where the government action was responsible for the witness' choice not to testify. Nor have the defendants established that this was a case in which it would be appropriate to consider the application of a judicially fashioned immunity within the parameters advanced by this court in *United States v. Herman,* 589 F.2d 1191, 1203–1204 (3d Cir. 1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979), for circumstances in which the "government's decisions [regarding immunity grants] were made with the deliberate intention of distorting the judicial fact finding process" or when "clearly exculpatory testimony" will be excluded because of a witness's assertion of the fifth amendment privilege. *Id.* at 1204. Defendants argue that it is "simply unfair" to permit the prosecutor to prove guilt with immunized evidence and deny the same to defendants. This claim does not rise to the level of constitutional deprivation encompassed in the *Herman* discussion.

■ We also reject the appellants' contention that they were more severely sentenced because of their failure to cooperate with the government. The facts here are not comparable to those presented in *United States v. Garcia,* 544 F.2d 681 (3d Cir. 1976), on which the appellants rely, where the sentencing judge strongly emphasized to the defendants that leniency would be conditioned upon cooperation. No such comments were made in this case. In addition, the trial court's failure to state reasons for the sentence imposed does not require a remand for new sentencing, because this Circuit has ruled that there is no requirement that the district judge give an explanation for each sentence imposed. *United States v. Del Piano,* 593 F.2d 539 (3d Cir.),

*cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). Appellants contend that the Philadelphia Traffic Court is not an "enterprise" within the meaning of 18 U.S.C.A. § 1961(4) which appellants urge should be confined to businesses and not extended to state governmental units. This contention has already been rejected in this Circuit. *See United States v. Frumento,* 563 F.2d 1083 (3d Cir. 1977), *cert. denied,* 434 U.S. 1072, 98 S.Ct. 1256, 1258, 55 L.Ed.2d 775, 776 (1978) (Pennsylvania Bureau of Cigarette and Beverage Taxes, a division of the Department of Revenue, held to be an enterprise); *United States v. Herman,* 589 F.2d 1191 (3d Cir.), *cert. denied* 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979) (applying RICO to Pittsburgh magistrates without discussing the enterprise issue); *United States v. Vignola,* 464 F.Supp. 1091 (E.D.Pa.1979), *aff'd mem.,* 605 F.2d 1199 (3d Cir. 1979) (Philadelphia Traffic Court held to be an enterprise). We have also considered and reject Cipparone's separate contention that the evidence was insufficient as to him to sustain his conviction under RICO and the conspiracy count.

Accordingly, the judgment of the district court will be affirmed.