# Department of Justice Participation on the Internal Revenue Service Undercover Review Committee

Disclosure of tax return information to a Department of Justice attorney serving on the Undercover Review Committee of the Internal Revenue Service is permissible under §6103 of title 26 of the United States Code as a limited referral for legal advice.

October 8, 1996

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL
TAX DIVISION

This memorandum responds to your request for our legal opinion on what limitations, if any, are imposed by the provisions of §6103 of the Internal Revenue Code on the participation by Department of Justice ("DOJ") attorneys on the Undercover Review Committee of the Internal Revenue Service ("IRS"). Letter for Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from Loretta C. Argrett, Assistant Attorney General, Tax Division (July 6, 1995) ("DOJ July 6, 1995 Letter"). Specifically, we have been asked to determine whether tax return information can be disclosed to DOJ attorneys sitting on the IRS Undercover Review Committee ("Committee") in investigations that have not been formally referred to DOJ by the IRS. As set forth below, we conclude that disclosure of tax return information to a DOJ attorney serving on the Committee is permissible under section 6103 as a limited referral for legal advice.

## I. *Background*

### A. *Section 6103*

Section 6103 of title 26 of the United States Code imposes restrictions on the disclosure of tax returns or tax return information. Only if authorized by statute can such information be disclosed. 26 U.S.C. §6103(a). In pertinent part, §6103(h)(2) and (3) provides for disclosure of tax returns or return information to DOJ attorneys. Section 6103(h)(2) states:

> (2) **Department of Justice.** — In a matter involving tax administration, a return or return information shall be open to inspection by or disclosure to officers and employees of the Department of Justice (including United States attorneys) personally and directly engaged in, and solely for their use in, any proceeding before a Federal grand jury or preparation for any proceeding (or investigation which may result in such a proceeding) before a Federal grand jury or any Federal or State court, but only if —

352

(A) the taxpayer is or may be a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability in respect of any tax imposed under this title;

(B) the treatment of an item reflected on such return is or may be related to the resolution of an issue in the proceeding or investigation; or

(C) such return or return information relates or may relate to a transactional relationship between a person who is or may be a party to the proceeding and the taxpayer which affects, or may affect, the resolution of an issue in such proceeding or investigation.

Section 6103(h)(3) provides:

(3) **Form of request.** — In any case in which the Secretary is authorized to disclose a return or return information to the Department of Justice pursuant to the provisions of this subsection —

(A) if the Secretary has referred the case to the Department of Justice, or if the proceeding is authorized by subchapter B of chapter 76, the Secretary may make such disclosure on his own motion, or

(B) if the Secretary receives a written request from the Attorney General, the Deputy Attorney General, or an Assistant Attorney General for a return of, or return information relating to, a person named in such request and setting forth the need for the disclosure, the Secretary shall disclose return or return information so requested.

A disagreement has arisen between the IRS and the Tax Division of DOJ as to what limitations, if any, are imposed by § 6103(h)(2) and (3) on the participation by a DOJ attorney on the Committee.

### B. *The Undercover Review Committee*

The IRS has promulgated, in the form of guidelines, specific procedures for the review, approval, conduct, and oversight of undercover operations. As set forth in these guidelines, the IRS recognizes that although the undercover technique

is lawful and valuable as an investigative tool, undercover operations can create legal problems. *Internal Revenue Manual* 910 at 9781–551 ("IRM").

Undercover operations conducted by the IRS are classified into two groups. Group I operations are deemed more sensitive in nature, and the approval of the Assistant Commissioner (Criminal Investigation) of the IRS must be obtained. These operations include those that exceed six months in duration and/or exceed the Director of Investigations' level of approval for confidential expenditures. IRM 922 at 9781–551. Group I operations also include any operation in which there is a reasonable chance that one or more of fourteen specified sensitive factors will arise. These factors include, inter alia, operations that will: result in significant civil claims against the United States; have an impact on investigations in numerous regions; involve public corruption crimes; involve an undercover person running the risk of being arrested or being required to give sworn testimony or attending a meeting where the subject understood a privilege would exist. *Id.* at 9781–551 to 552.

Group II operations are those undercover activities that do not meet the Group I requirements. The IRS Director of Investigations is authorized to approve requests for Group II operations. *Id.* at 9781–552.

Requests for undercover operations must be submitted in writing, setting forth information necessary to evaluate the particular request. Each request must include in narrative form the evidence obtained to date that would lead a reasonable person to believe a violation of law has occurred. Not all undercover operations involve tax or tax-related crimes. Some investigations involve crimes such as money laundering.

The request must also establish that the undercover operation is the only efficient investigative alternative available. IRM 931 at 9781–553. We have been advised by the IRS that every submission to the Committee for a tax or tax-related investigation includes all information generated or collected by the IRS regarding the investigation, the identity of the taxpayer and the nature and plan of investigation and the potential charges, and tax return information for purposes of § 6103. Letter for Richard L. Shiffrin, Deputy Assistant Attorney General, Office of Legal Counsel, from Eliot D. Fielding, Associate Chief Counsel, Enforcement Litigation, Internal Revenue Service (Jan. 22, 1996) ("IRS Jan. 22, 1996 Letter").

All requests for Group I operations are reviewed by the Committee. The Committee also reviews significant deviations in ongoing Group I operations and all requests for recoverable funds which exceed an aggregate of $50,000 in Group II operations. The Committee is advisory in nature and makes recommendations to the Assistant Commissioner (Criminal Division).

The Attorney General and the IRS Commissioner have agreed in a Memorandum of Understanding ("MOU"), signed in August 1995, on following specified procedures for the review and approval of certain undercover operations conducted by the IRS. According to the MOU, an attorney from either the Criminal Division or Tax Division of the Department of Justice will serve on the Committee

in assessing Group I operations that exceed one year in duration and/or require approval of more than $40,000 in confidential funds.

With the exception of the DOJ attorney, the Committee is comprised of IRS officials: the Director, National Operations Division; the Assistant Chief Counsel (Criminal Tax); and the Chief, Office of Special Investigative Techniques; or their designees. The Assistant Commissioner (Criminal Investigation) may invite other individuals to participate in the Committee. IRM 932 at 9781–554(2); MOU at 3.

According to the MOU, the Committee shall meet on a regular basis to consider initial requests for qualifying Group I undercover operations or significant deviations to previously approved plans of action. No more than four operations will be scheduled for each meeting. Prior to each meeting, Committee members are to receive a sealed packet containing the undercover requests. The materials must be securely maintained and may not be copied. The materials must be returned after the Committee meeting. MOU at 3–4.

The IRS National Operations Division, Office of Special Investigative Techniques, is responsible for the presentation of the undercover request packets to the Committee. Prior to the Office of the Special Investigative Techniques' receipt of the requests, however, each request has been reviewed and approved by the respective IRS Division Chief, District Director and Area Director of Investigations. MOU at 3.

After consideration of each request is completed, the Committee makes a recommendation to the Assistant Commissioner (Criminal Investigation) that the operation be approved, approved with conditions, or disapproved. The recommendation is based upon a majority vote of the Committee members. The Committee's recommendation, minutes from the Committee meeting and the undercover request is then sent to the Assistant Commissioner (Criminal Investigation) for final action. MOU at 4.

In the event the DOJ attorney disagrees with the Committee's recommendation for approval because of legal, ethical, prosecutive, or departmental policy considerations, the appropriate Assistant Attorney General shall consult with the Assistant Commissioner (Criminal Investigation). If the disagreement is not resolved, no further action shall be taken on the undercover request without the approval of the IRS Chief Compliance Officer.

The MOU states that the "undercover technique is a valuable law enforcement investigative tool" and is essential to the enforcement of tax and tax related statutes. MOU at 1. The MOU acknowledges that because the undercover tool is sensitive and potentially intrusive, care must be exercised to ensure that the technique is used properly. The parties agree that the participation of a DOJ attorney in the approval process for the sensitive operations is necessary "to ensure legal, ethical, and prosecutorial uniformity in the application of the undercover technique for Federal law enforcement." MOU at 2. The IRS has informed us that the "DOJ

attorney would necessarily require access to tax data in order to permit a meaningful review of the details'' of the operation. IRS Jan. 22, 1996 Letter at 10.

## C. *The Positions of the IRS and the Tax Division*

The IRS and the Tax Division have informed us of their respective positions in several letter submissions, all of which we have reviewed and considered in reaching the conclusions set forth herein. Letter for Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from Stuart L. Brown, Chief Counsel, Internal Revenue Service (Aug. 21, 1995) (''IRS Aug. 21, 1995 Letter''); Letter for Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from Eliot D. Fielding, Associate Chief Counsel, Enforcement Litigation, Internal Revenue Service (Sept. 11, 1995); IRS Jan. 22, 1996 Letter; DOJ July 6, 1995 Letter; Letter for Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from Loretta C. Argrett, Assistant Attorney General, Tax Division (Aug. 25, 1995) (''DOJ Aug. 25, 1995 Letter''); Letter for Richard L. Shiffrin, Deputy Assistant Attorney General, Office of Legal Counsel, from Mark E. Matthews, Deputy Assistant Attorney General, Tax Division (Jan. 24, 1996) (''DOJ Jan. 24, 1996 Letter'').

The IRS takes the position that the disclosure of tax information to a DOJ attorney serving on the Committee is not permissible under §6103. The IRS believes that §6103(h)(2) and (3) must be read in conjunction with one another because §6103(h)(2) alone does not provide independent disclosure authorization. According to the IRS, even where the requirements of §6103(h)(2) are satisfied, a disclosure is authorized only where the Secretary or his designee has referred a case to DOJ, the proceeding falls under subchapter B of chapter 76 or a written request is submitted by a DOJ official listed in §6103(h)(3)(B).

In construing what constitutes a ''referral'' for purposes of §6103(h)(3), the IRS asserts that an ''institutional decision'' must first be made by the IRS to request that DOJ provide advice or assistance. Once that decision has been made, a ''referral'' is appropriate in one of three forms. First, a ''formal'' referral (also known as a referral of ''the case on the merits'') is where the IRS requests that DOJ conduct a grand jury investigation, or prosecute, defend, or take some other affirmative action in court with respect to a case. IRS Aug. 21, 1995 Letter, attached memorandum at 15; IRS Jan. 22, 1996 Letter at 1–2.

Another type of referral is where a limited aspect of the case is referred by the IRS to DOJ for purposes of DOJ representing the IRS in court for a specific purpose, such as to obtain approval for an immunity order, to enforce a summons, or to obtain a search or arrest warrant or writ of entry. IRS Jan. 22, 1996 Letter at 2–4.

The third type of referral, and the one most relevant to the issue herein, is where the IRS makes tax return information disclosures to DOJ in seeking advice

on issues arising during the investigative stage and prior to a formal referral of the case. IRS Jan. 22, 1996 Letter at 4–6. In this type of referral, the IRS asserts that DOJ advice may be sought only on a case-by-case basis by those officers with authority to make the referral. According to the IRS, the solicitation must be made of the DOJ division to which a formal referral would be submitted, and only after the IRS has made a preliminary determination that a formal referral may be appropriate. [1] In addition, the disclosures must be limited to the information necessary to obtain the legal advice sought on the specific case. *Id.* at 4–5.

The IRS relies upon the "Blue Book" [2] on the Tax Reform Act of 1976 and various IRS publications as authority for its practice of referring a limited aspect of the case to DOJ or seeking advice prior to a formal referral. *Id.* at 3–4, n.4 & 7. The Blue Book states in relevant part:

> For purposes of [6103(h)(3)], the referral of a tax matter by the IRS to the Justice Department would include those disclosures made by the IRS to the Justice Department in connection with the necessary solicitation of advice and assistance with respect to a case prior to formal referral of the entire case to the Justice Department for defense, prosecution, or other affirmative action.

Staff of Joint Comm. on Taxation, 94th Cong., 2d Sess., *General Explanation of the Tax Reform Act of 1976*, at 322 (Comm. Print 1976) ("Blue Book").

The IRS rejects the notion that DOJ's participation on the Committee would constitute any of the referral types permitted by §6103. The IRS argues that the disclosures to the DOJ attorney would not qualify as the type of pre-formal referral "advice" contemplated by the Blue Book because certain prerequisites to soliciting advice from DOJ are not satisfied. Specifically, the IRS claims that an "institutional decision" to seek DOJ advice is lacking and that no decision has been made on a "case-by-case" basis after a preliminary determination that a formal referral may thereafter be appropriate. In addition, IRS officials submitting requests to the Committee are not necessarily authorized to "refer" matters to DOJ for purposes of §6103 and the DOJ attorney serving on the Committee would not necessarily be from the division to which a formal referral would be made.

The Tax Division agrees with the IRS that §6103(h)(2) and (3) must be read in conjunction with one another. The Tax Division characterizes the only issue in dispute as centering on what constitutes a "referral" under §6103(h)(3). The Tax Division agrees with the IRS that a §6103 referral includes a formal referral

---

[1] According to the IRS, the question of which officials have authority to refer matters to DOJ depends upon the type of investigation involved. IRS documents specify who these officials are. Disclosures to DOJ are generally made by IRS District and Regional Counsel, and the Assistant Commissioner of Criminal Investigation. IRM (22)55.1, at 1272–298.2; *see also* IRS Jan. 22, 1996 Letter at 4–5, Tabs C & L.

[2] For further discussion of the Blue Book *see infra* pp. 360–61.

of the case and a limited referral for the purpose of seeking DOJ assistance in court or advice during the investigative stages of cases. The Tax Division acknowledges that a limited referral terminates once the advice or assistance has been rendered. The Tax Division disagrees, however, with the IRS as to whether disclosures to the DOJ attorney serving on the Committee constitute the type of limited referrals permitted by § 6103. Relying upon the plain meaning of the statute, the Blue Book, and the practices of the IRS, the Tax Division claims that the disclosures to the DOJ attorney are permissible under the statute as a limited referral for purposes of seeking advice. *See* DOJ Aug. 25, 1995 Letter; DOJ Jan. 24, 1996 Letter.

## II. *Analysis*

We believe that the IRS and the Tax Division are correct that § 6103(h)(2) and (3) must be read in conjunction with one another. Section 6103(h)(3) provides in relevant part that "[i]n any case in which the Secretary is authorized to disclose a return or return information to the Department of Justice pursuant to the provisions of this subsection," the Secretary may make such disclosure if the Secretary has referred a case to DOJ, the proceeding falls under subchapter B of chapter 76, or a written request is submitted by an authorized DOJ official. In its plain meaning, the quoted language refers to a disclosure authorized by § 6103(h)(2).

The primary guide to statutory interpretation is the plain meaning of the text. As stated by the Supreme Court in *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989):

> The plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982). In such cases, the intention of the drafters, rather than the strict language, controls.

This is not the "rare case[]" where the result that follows from the statute's text is "demonstrably at odds" with its underlying congressional purpose. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982). The legislative history supports the conclusion we have reached from a plain reading of the statute.

In explaining the provisions relating to disclosures to DOJ representatives in tax cases, the Senate Committee on Finance stated:

> The Justice Department would continue to receive returns and return information with respect to the taxpayer whose civil or criminal tax liability was at issue.

. . . .

> Except in those instances where a tax matter was referred by the IRS to the Department of Justice, and tax refund cases under Subchapter B of Chapter 76, the Department of Justice would be required to make a written request (by the Attorney General, the Deputy Attorney General, or an Assistant Attorney General) for the inspection or disclosure of returns and return information, setting forth the reasons for such disclosure or inspection.

S. Rep. No. 94–938, at 325–26 (1976). The conference agreement adopted a shortened version of this explanation in its report. "The Justice Department will continue to receive returns and return information with respect to the taxpayer whose civil or criminal tax liability is at issue. Written request is required in cases other than refund cases and cases referred by the IRS." Staff of House Comm. on Ways and Means, 94th Cong., 2d Sess., *Summary of Conference Agreement on the Tax Reform Act of 1976*, at 44 (Comm. Print 1976). *See also* H.R. Conf. Rep. No. 94–1515, at 477 (1976); S. Conf. Rep. No. 94–1236, at 477 (1976).

Courts addressing the issue have adopted the same plain meaning of § 6103(h)(2) and (3). In *United States v. Chemical Bank*, 593 F.2d 451, 457 (2d Cir. 1979), the Second Circuit found that DOJ attorneys may obtain tax returns and return information pursuant to § 6103(h)(2) "only on compliance with" § 6103(h)(3). Similarly, the Third Circuit found that in tax cases "there are two possible routes under which disclosure of tax returns and return information can be made" to DOJ attorneys — compliance with either § 6103(h)(3)(A) or § 6103(h)(3)(B). *United States v. Bacheler*, 611 F.2d 443, 447 (3d Cir. 1979). *See also United States v. Robertson*, 634 F. Supp. 1020, 1027 n.9 (E.D. Cal. 1986) ("Section 6103(h)(3) sets forth two alternative procedures by which the Department of Justice may inspect return information when [§ 6103(h)(2)] is satisfied . . . ."), *aff'd*, 815 F.2d 714 (9th Cir.), *cert. denied*, 484 U.S. 912 (1987).

We now turn to the issue in dispute, whether disclosure of tax return information to a DOJ attorney serving on the Committee is permissible under § 6103 as a limited referral for advice. Section 6103 provides that the IRS may make disclosures of tax information to DOJ attorneys if the case has been "referred" to DOJ. We agree with the IRS and the Tax Division that referrals under § 6103 include a formal referral of the entire case, as well as a limited referral for purposes of seeking DOJ assistance in court or advice during the investigative stages.

Nothing in the plain meaning of the statute or in its legislative history suggest that Congress intended that the term "referred" be narrowly construed. Section 6103 states, in relevant part, that tax information may be disclosed to DOJ employees for use in the grand jury or other proceeding, or in an "investigation which may result in such a proceeding." 26 U.S.C. § 6103(h)(2). This language

clearly contemplates disclosures to DOJ not only when a tax matter is far enough along for presentment to the grand jury or in some court proceeding, but where disclosures are needed at the investigative stage. We know from the practices of the IRS and DOJ, as discussed below, that disclosures at the investigative stage are often made in seeking legal advice from DOJ attorneys prior to a formal referral of the entire case. These pre-formal referral practices play a critical role in the effective enforcement of tax statutes.

The legislative history confirms that pre-formal referral disclosure is permissible as a § 6103 referral. As the IRS has stated:

> the legislative history of [Section] 6103 indicates that Congress intended a broad interpretation of the term [referred] and acceptance of the definition traditionally used by the Service and the Department of Justice.

IRM, (22)53, at 1272–298.2. The legislative history reveals that Congress did not intend to limit DOJ's access to tax information that was necessary in enforcing criminal tax statutes. *See* S. Rep. No. 94–938, at 324–25; Staff of House Comm. on Ways and Means, 94th Cong., 2d Sess., *Summary of Conference Agreement on the Tax Reform Act of 1976*, at 44–45 (Comm. Print 1976); *see also United States v. Bacheler*, 611 F.2d at 449 ("Section 6103 recognized the need of the Justice Department for continued access to tax returns and return information in carrying out its statutory responsibility in the civil and criminal tax areas and did not seek to change the rules pertaining to the disclosure of returns and return information of the taxpayer whose civil and criminal tax liability is at issue."). And, we know from the agencies' practices that disclosures prior to formal referral are essential to prosecuting tax crimes. The legislative history reveals that in adopting the statute, Congress was concerned with protecting individuals against misuses of tax information by the government. *See Beresford v. United States*, 123 F.R.D. 232 (E.D. Mich. 1988); *McSurely v. McAdams*, 502 F. Supp. 52 (D.D.C. 1980). For example, Congress sought to address DOJ's use of tax information in nontax cases. *See* S. Rep. No. 94–938, at 316–17; Staff of House Comm. on Ways and Means, 94th Cong., 2d Sess., *Summary of Conference Agreement on the Tax Reform Act of 1976*, at 45 (Comm. Print 1976); *see also McLarty v. United States*, 741 F. Supp. 751, 755 (D. Minn. 1990), *reconsideration granted on other grounds*, 784 F.Supp. 1401 (D. Minn. 1991).

In addition, the Blue Book specifically states that a referral includes disclosures made in connection with "the necessary solicitation of advice and assistance with respect to a case prior to formal referral of the entire case to the Justice Department for defense, prosecution, or other affirmative action." Blue Book at 322. Although some courts have held that the Blue Book is not part of the statute's "legislative history" per se, *see, Flood v. United States*, 33 F.3d 1174, 1178 (9th

Cir. 1994); *Estate of Wallace v. Commissioner*, 965 F.2d 1038, 1050 n.15 (11th Cir. 1992); *Todd v. Commissioner*, 862 F.2d 540, 541–42 (5th Cir. 1988); *Hutchinson v. Commissioner*, 765 F.2d 665, 669–70 (7th Cir. 1985); *Redlark v. Commissioner*, 141 F.3d 936 (9th Cir. 1998); *Zinniel v. Commissioner*, 89 T.C. 357, 365–66 (1987), courts agree that the Blue Book is a valuable aid in understanding and interpreting the federal tax code, *see Condor Int'l, Inc. v. Commissioner*, 98 T.C. 203, 227 (1992), *aff'd in part and rev'd in part*, 78 F.3d 1355 (9th Cir. 1996); *Estate of Wallace*, 965 F.2d at 1050 n.15; *Todd*, 862 F.2d at 542–43; *McDonald v. Commissioner*, 764 F.2d 322, 336 n.25 (5th Cir. 1985); *Allison v. United States*, 701 F.2d 933, 940 n.9 (Fed. Cir. 1983); *Hutchinson*, 765 F.2d at 669–70; *Estate of Ceppi v. Commissioner*, 698 F.2d 17, 19 (1st Cir. 1983), *cert. denied*, 462 U.S. 1120 (1983); *Bank of Clearwater v. United States*, 7 Cl. Ct. 289, 294 (1985). Indeed, the Supreme Court observed that the Blue Book constituted a "compelling contemporary indication" of legislative intent. *Federal Power Comm'n v. Memphis Light, Gas & Water Div.*, 411 U.S. 458, 472 (1973).

The IRS does not dispute the relevance of the Blue Book as to the issue raised herein. Indeed, an IRS training manual entitled *Disclosure Litigation Training Reference*, states in relevant part:

> As for prereferral advice, although no court has addressed the issue, a referral for purposes of section 6103(h)(3) may, in appropriate circumstances, include disclosures made by the IRS to Justice in connection with the necessary solicitation of advice and assistance with respect to a case prior to the formal referral (citing the Blue Book).

Office of Chief Counsel, IRS, *Disclosure Litigation Training Reference* 45 (July 1994).

In sum, we believe a § 6103 referral does include those occasions where the IRS solicits DOJ advice during the investigative stage, but prior to a formal referral of the case.[3] We now turn to the issue whether DOJ's participation on the Committee would fall within this type of referral category.

The IRS claims that the solicitation of advice from the DOJ attorney on the Committee does not qualify as a § 6103 referral because the undercover proposals do not satisfy certain prerequisites. The Tax Division takes the contrary position, citing current practices of the IRS in seeking pre-formal referral advice from DOJ attorneys as analogous to the advice sought from the Committee attorney. These practices include the following:

---

[3] Although no court has decided the issue presented herein, at least one court has broadly construed what constitutes a "referral" for purposes of § 6103. *See United States v. Bacheler*, 611 F.2d 443 (3d Cir. 1979). Courts have also acknowledged the importance of DOJ and IRS working together in investigating and prosecuting tax crimes. *See id.; United States v. Chemical Bank*, 593 F.2d 451 (2d Cir. 1979).

*Advice concerning IRS summons for records and/or testimony.* IRS agents or District Counsel attorneys often contact DOJ civil trial or appellate attorneys in the Tax Division for advice relating to the defensibility of the procedures or scope of an IRS summons. Disclosure of tax information and often the identity of the taxpayer are essential to rendering the opinion requested.

*Case development and strategy.* On a regular basis, Tax Division lawyers receive telephone calls from IRS District Counsel attorneys seeking advice about the course of legal action that should be pursued in certain factual situations to build a strong case against the defendant. Full disclosure is made in seeking this type of advice. In some instances, representatives from the IRS Criminal Investigation Division meet with Tax Division managers to discuss a whole class of cases focused on a particular market segment. Tax information has been disclosed so that the Tax Division could assess the likelihood that the cases would be prosecuted.

*Coordination of multi-district litigation.* In IRS investigations that cross judicial districts, IRS District Counsel attorneys may disclose details of the cases to DOJ in seeking advice as to whether all of the cases would be prosecuted and to facilitate the coordination of those prosecutions.

*Appellate issues.* IRS personnel frequently contact the Tax Division appellate attorneys about specific issues pending in DOJ cases that are similar to ones arising in IRS investigations. To fully discuss the legal implications, IRS personnel often disclose tax information to the DOJ attorney.

*Cases requiring prompt DOJ action.* In exigent circumstances where prompt DOJ action is necessary, IRS personnel will make disclosures to DOJ so that DOJ attorneys can begin working on the case. The IRS describes these circumstances as part of the referral procedure and not a request for prereferral advice. IRS Jan. 22, 1996 Letter at n.2. The Tax Division asserts that the disclosures are made before any formal referral of the case has been made.

*DOJ prosecution policies.* The Tax Division and the IRS describe another situation where pre-formal referral solicitation occurs. In determining whether DOJ's dual prosecution policy applies to preclude a particular federal prosecution, certain procedures must be followed by the IRS and DOJ. In compliance with these requirements, tax information must be disclosed. The IRS describes this procedure as rarely used during the past several years.

*Consensual monitoring of conversations.* The Tax Division and the IRS acknowledge that pre-formal referral disclosures are made in compliance with DOJ policy that IRS agents seek DOJ approval prior to engaging in any consensual monitoring during an investigation. The DOJ policy is set forth in a 1983 Attorney General Memorandum signed by William French Smith and in the United States Attorney's Manual. Memorandum to Heads and Inspectors General of Executive Departments and Agencies, from William French Smith, Attorney General, *Re: Procedures for Lawful, Warrantless Interceptions of Verbal Communications* (Nov. 7, 1983); USAM 9–7.302 (July 1, 1992). The IRS requires compliance with

the DOJ policy. IRM 9389. As explained in the Internal Revenue Manual, the purpose of the policy is "to avoid any abuse or any unwarranted invasion of privacy." *Id.* at 9389.1 at 9–228.4. The Tax Division explained that the policy has the additional purposes of ensuring that the interception be carried out in a way that will withstand challenge in court and that a uniform approach to monitoring be utilized throughout the country. DOJ Jan. 24, 1996 Letter at 6.

We agree with the Tax Division that the current practices are analogous to and legally indistinguishable from DOJ's participation on the Committee.[4] We also agree that disclosures to the DOJ attorney on the Committee would be permissible referrals under §6103. DOJ's involvement on the Committee is necessary "to ensure legal, ethical, and prosecutorial uniformity in the application of the undercover technique for Federal law enforcement." MOU at 2. The role played by the DOJ attorney would include assisting in the development of a uniform approach to the use of the undercover technique and to ensure that prosecutive issues are addressed at the earliest stage. The attorney could help ensure that the investigation would withstand challenge in court, by advising on entrapment and double jeopardy defenses, as well as other issues. To fulfill the role of providing the desired advice and assistance, the DOJ attorney would need full access to the relevant tax information. We understand that the disclosures, however, would be limited to the information necessary to obtain the advice sought on the specific proposal and that such information would be returned upon completion of the assignment.

The nature of Group I operations creates the necessity for the solicitation of DOJ advice in approving the proposals. A Group I undercover operation is a sensitive and potentially intrusive technique, and care must be exercised to ensure that it be used properly. MOU at 2. A flawed operation could create significant legal impediments to a tax prosecution. If done correctly, however, the technique is a valuable law enforcement investigative tool and is essential to the enforcement of tax and tax related statutes. MOU at 1. IRS policies associated with these operations underscore the legitimate legal concerns associated with the practice.

Under these circumstances, we are compelled to conclude that DOJ's participation on the Committee falls within the rubric of the pre-formal referral advice contemplated by §6103, as articulated in the Blue Book and applied in other practices by the IRS and DOJ. We do not find persuasive the contrary arguments made by the IRS. Specifically, the IRS claims that the disclosures are not permissible because no "institutional decision" to refer a specific question to DOJ exists. Nor has a preliminary determination been made that a formal referral may thereafter be appropriate. The IRS also states that the proposals to the Committee would not necessarily be submitted by an IRS official with authority to make a §6103

---

[4] Although the IRS now raises a question as to the propriety of its 20 year compliance with DOJ policy relating to consensual monitoring (*see* IRS Jan. 22, 1996 Letter at 10), we think the practice is permissible under the scope of §6103.

referral. Nor would the DOJ attorney on the Committee necessarily be from the DOJ division to which a formal referral would be made.

First, assuming § 6103 requires that solicitations for advice must be made on a case-by-case basis or after an "institutional decision" has been made, as well as a preliminary determination that a formal referral may be appropriate, we believe that referring requests to the Committee for approval of Group I operations would satisfy these standards. The qualifying requirements for Group I operations necessarily limit the types of requests made to the Committee. Determining that a matter satisfies the prerequisites for a proposed undercover operation constitutes a case-by-case determination. Indeed, before proposals are submitted to the Committee, several IRS officials must review and approve the proposals. We understand that the number of undercover requests submitted to the Committee are few in relation to the total number of IRS investigations and that no more than four operations are considered at any one Committee meeting.

In addition, the very nature of Group I operations and the associated approval process would suggest that the IRS views these type of investigations as ones that may be appropriate for referral to DOJ for prosecution. And, the assistance proffered by the DOJ attorney would be limited in nature based upon the issues posed by the particular operation and relevant tax information. These circumstances, that is the special role of the Committee, the policies associated with referring qualifying proposals to the Committee for approval, the particular nature of Group I undercover investigations, and the IRS decision to enter into an MOU for DOJ participation, would suggest that an "institutional decision" has been made to seek DOJ advice in a particular matter. Simply put, we cannot agree that these facts support IRS' claim that disclosures to the DOJ attorney would be tantamount to giving DOJ "free and unfettered" access to tax information in a whole class of cases.

Even if, however, the submissions to the Committee were correctly characterized as a referral of "a class of cases," we do not believe § 6103 precludes such referrals. Some of the IRS' current practices of consulting with DOJ attorneys prior to a formal referral could also be characterized as referrals of whole classes of cases. For example, as discussed above, IRS representatives occasionally meet with DOJ attorneys to discuss whole classes of cases, wherein tax information is disclosed in seeking legal advice. Similarly, the IRS practice of complying with the DOJ consensual monitoring policy could be characterized as a referral of a whole class of cases. In these practices, as well as the proposed Committee work, the solicitations for advice are essential to the successful prosecutions of tax violations. For example, as to the consensual monitoring cases, the solicitations help "to avoid any abuse or any unwarranted invasion of privacy," IRM 9389.1 at 9–228.4, and to build a legally stronger investigation. DOJ Jan. 24, 1996 Letter at 6. No one can dispute that uniformity in tax investigations and prosecutions

is critical to the success of the federal tax enforcement program. *See* USAM 6–4.000 (Mar. 1, 1994).

In sum, we do not believe § 6103 was intended to preclude DOJ from providing advice in cases that as a class present legitimate legal concerns. The objectives behind the current practices, as well as DOJ's participation on the Committee, are entirely consistent with the statute's legislative history and Blue Book provision. The legislative history shows that § 6103 was not intended to interfere with DOJ's access to tax information that is necessary in enforcing the tax laws. *See* S. Rep. No. 94–938, at 324–25; Staff of House Comm. on Ways and Means, 94th Cong., 2d Sess., *Summary of Conference Agreement of the Tax Reform Act of 1976*, at 44–45 (Comm. Print 1976); *see also Bacheler*, 611 F.2d at 449. And, the Blue Book explicitly states that the IRS may make disclosures to DOJ "in connection with the necessary solicitation of advice." [5] Blue Book at 322.

Finally, we are not persuaded by IRS' claim that DOJ's full participation on the Committee is impermissible because the "referrals" are not necessarily made by IRS officials with authority to do so, or that the DOJ attorney would not be from the division to which a formal referral would be made. We agree that the "referral" must be made by IRS personnel with the authority to do so. We also believe, however, that this prerequisite can be satisfied. To the extent persons involved in submitting requests to the Committee are not currently authorized to "refer" matters to DOJ for purposes of § 6103, the IRS orders or practices can be amended to guarantee that the persons referring the matters to the Committee have the appropriate authority. We are unaware of any authority for the remaining alleged prerequisite, that the DOJ attorney must be from the division to which a formal referral would be made, nor has any been called to our attention. Moreover, the current practices of the IRS in soliciting DOJ advice, as discussed above, do not appear to be consistent with the existence of such a requirement. In any event, if such a prerequisite is desired, it could easily be complied with by redesignating, as necessary, which DOJ attorney would sit on the Committee for specific proposals.

CHRISTOPHER H. SCHROEDER
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[5] We construe "necessary" here to mean solicitation that will further federal efforts in the tax enforcement program.